Mark E. O'BRIEN, Plaintiff–Appellee,

v.

R.J. O'BRIEN & ASSOCIATES, INC., Defendant–Appellant.

No. 92–1567.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1992.

Decided July 8, 1993.

Daniel G. Loftus (argued), Chicago, IL, Thomas P. Sughrua, Bellevue, WA, for plaintiff-appellee.

Kenneth M. Lodge, Ronald L. Sandack (argued), Burke, Smith & Williams, Vincent D. Pinelli, Burke, Burns, Ellison & Pinelli, Chicago, IL, for defendant-appellant.

Before CUDAHY, FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

The district court defaulted the defendant, R.J. O'Brien & Associates, Inc. (RJO), on the basis that it failed to appear or file a response to the complaint of Mark E. O'Brien (O'Brien) for over seventeen months after being served with process. On appeal, RJO challenges the district court's entry of the default and its refusal to set aside the default order and the subsequent default judgment. RJO also alleges that the district court failed to provide it with an opportunity to present evidence regarding the amount of damages. We affirm both the default and the entry of default judgment.

*Background*

This dispute reaches us after a prolonged journey through two district courts. On April 28, 1989, O'Brien filed a multiple count complaint in the United States District Court for the Western District of Washington against numerous defendants, including RJO and The Sage Group, Inc. (Sage). O'Brien maintained an investment account with Sage, an introducing broker, who purchased silver options for him through RJO. Count III of O'Brien's complaint alleged that RJO fraudulently executed the silver option transactions in violation of the Commodities Futures Trading Act, resulting in the loss of approximately $20,000 from his investment account with Sage.

In March 1990, the case was transferred to the United States District Court for the Northern District of Illinois pursuant to a forum selection clause in a contract between O'Brien and RJO. Over ten months later,

O'Brien moved to default RJO, which had not filed an appearance or responded to the complaint. At a default hearing on January 23, 1991, counsel for RJO asserted that it had not been served. When O'Brien was unable to produce proof of service, he withdrew his motion for default. Two days later, O'Brien filed another motion for default, this time accompanied by a copy of the summons and a return of service indicating that RJO had been served on August 23, 1989. On February 1, 1991, the district court conducted a hearing on the second motion for default, at which RJO was unable to explain its failure to answer or respond to the complaint other than by stating it was attempting to investigate the validity of service. Relying on the presumptive validity of the return of service and determining that no appearance had been entered on behalf of RJO, the district court entered an order defaulting RJO and scheduled for March 22, 1991 a "prove-up" hearing to determine the amount of damages to be awarded.

Before the district judge on March 1, 1991, RJO entered its appearance and filed a motion to vacate the entry of default. O'Brien filed its response to RJO's motion to vacate. RJO was given until March 8 to file a reply to O'Brien's response. The district judge set March 22 as the date for ruling or hearing on the motion to vacate and indicated that he would also hold the previously scheduled "prove-up" hearing on that date.

At the March 22 hearing, the district judge inquired as to the status of the motion to vacate, and the parties responded that it was fully briefed. As to the scheduled "prove-up" for damages, O'Brien filed a motion for default judgment and submitted materials supporting his request for damages. The district judge indicated that he would decide the motion to vacate the default, and, if he denied that motion, he would then consider the parties' submissions related to the judgment to be entered on the default. RJO did

not object to the procedure outlined by the district court. At that time, however, RJO failed to submit any evidence indicating its view with regard to damages, in the event the motion to vacate the default was denied.

In an order dated March 28, 1991, the district court denied the motion to vacate and entered default judgment against RJO in the amount of $40,000, plus prejudgment interest. *O'Brien v. The Sage Group, Inc.*, 136 F.R.D. 151 (N.D.Ill.1991).

On April 11, 1991, RJO filed a motion requesting the court (1) to dismiss the case for lack of personal jurisdiction because of defects in the summons served on RJO, (2) in light of such defects, to reconsider its March 28, 1991 order denying RJO's Rule 55(c) motion to vacate, (3) to vacate the default judgment pursuant to Fed.R.Civ.P. 60(b), or (4) to vacate the award of damages and set a hearing to determine the actual amount of damages.

On January 22, 1992, the court denied RJO's motion to dismiss for lack of personal jurisdiction and the motions to set aside the default, but reduced the amount of the default judgment to $20,000, the amount alleged in Count III of O'Brien's complaint. *O'Brien v. The Sage Group, Inc.*, 141 F.R.D. 81 (N.D.Ill.1992).

On appeal, RJO urges us to find that the district court abused its discretion either by entering default or by refusing to set aside the default and subsequent default judgment.[1] At a minimum, RJO argues, the district court erred by not providing it with an opportunity to present evidence on the proper amount of damages.

*Entry of Default*

■ Fed.R.Civ.P. 12(a) requires the defendant to file an answer within twenty days after the service of the summons and complaint; the failure to do so may result in the defendant's default under Rule 55(a). When RJO did not appear or respond to O'Brien's

---

1. At RJO's request, on March 5, 1992, the district court entered an order making its January 22 order regarding RJO final and appealable under Fed.R.Civ.P. 54(b). *O'Brien v. The Sage Group, Inc.*, 141 F.R.D. 273 (N.D.Ill.1992). Because "[a]n appeal from a final judgment brings up for review by the appellate court all orders ... ren-

dered by the trial court previously in the litigation," *In re Grabill Corp.*, 983 F.2d 773, 775 (7th Cir.1993), we may also consider the February 1, 1991 entry of default and the March 28, 1991 refusal to vacate. *See In re Kilgus*, 811 F.2d 1112, 1115–16 (7th Cir.1987).

complaint after being served with process seventeen months earlier, the district court granted O'Brien's motion for default on February 1, 1991. The decision to enter default lies within the district court's discretion. *Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 250 (7th Cir.1990). RJO argues that the district court abused its discretion in entering the default order for two reasons.

First, RJO asserts that because O'Brien failed to file the return of service until the filing of the motion requesting default, RJO did not have sufficient time to investigate the service of process. O'Brien withdrew his initial motion for default on January 23, 1991, when he was unable to supply the court with proof of service. On January 25, O'Brien again moved for default, this time presenting the court with proof of service indicating RJO had been served on August 23, 1989. Seven days later, on February 1, the district court entered default against RJO. RJO contends that in doing so, the district court abused its discretion by not affording RJO time to investigate the validity of the newly filed return of service, especially in light of RJO's assertions at the January 23 hearing that it had not been served, as well as O'Brien's willingness at that hearing to allow RJO twenty-eight days "in which to decide how to respond to the motion and/or answer on the merits of the complaint."

 A signed return of service constitutes prima facie evidence of valid service "which can be overcome only by strong and convincing evidence." *Hicklin v. Edwards*, 226 F.2d 410, 414 (8th Cir.1955). *See also Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 808–09 (7th Cir.1969).[2] At the February 1, 1991 hearing on the motion to default, the district court relied on the presumptive validity of the return of service in defaulting RJO. The sworn statement contained on the return of service indicates the summons was served on August 23, 1989. At the default hearing, RJO conceded it had not appeared and did not offer any evidence indicating it had not been served, but rather asserted it was at-

tempting to investigate the validity of service. Absent evidence to the contrary, the district court did not abuse its discretion by concluding that RJO had in fact been served in August, 1989.

 Second, RJO contends that the time period for filing an answer under Rule 12 did not begin until the return of service was filed on January 25, 1991, and thus RJO still had time to file its answer when the court entered default on February 1. RJO relies on *Audio Enterprises v. B & W Loudspeakers*, 957 F.2d 406 (7th Cir.1992), in which we held that service was not complete, and thus not valid under Fed.R.Civ.P. 4(c)(2)(C)(ii), until the plaintiff filed the defendant's acknowledgement of service by mail. This holding does not conflict with the district court's actions in this case. Unlike the filing of an acknowledgement for valid service of process by mail, which Rule 4(c)(2)(C)(ii) requires, in the case of personal service, "[f]ailure to make proof of service does not affect the validity of service." Fed.R.Civ.P. 4(g). *See King v. Best Western Country Inn*, 138 F.R.D. 39, 43 (S.D.N.Y. 1991); *Bernard v. Strang Air, Inc.*, 109 F.R.D. 336, 338 (D.Neb.1985). Consequently, O'Brien's failure to file the return of service until January 25, 1991 did not extend the twenty-day deadline before which RJO had to file an answer under Rule 12.

Entry of default by the district judge against RJO for its unexplained failure to appear, answer or respond from August 23, 1989 through February 1, 1991, does not constitute abuse of discretion.

*Waiver of Personal Jurisdiction*

 In its April 11 Motion, RJO requested that the district court set aside the default judgment, arguing that the judgment was void because the court lacked personal jurisdiction due to defects in the form of the summons served on RJO. We agree with the district court that RJO waived any challenge to personal jurisdiction by failing to

---

**2.** While *Hicklin* and *Taft* were decided before Rule 4 was amended to allow service by someone other than a United States Marshal, in light of the Fed.R.Civ.P. 4(c)(2)(A) provision for service "by any person who is not a party and is not less

than 18 years of age" and the server's declaration, under penalty of perjury, that service occurred, the return of service still constitutes strong evidence of valid service.

raise the issue in its initial motion to vacate of March 1, 1991.

Fed.R.Civ.P. 4(b) sets forth the requirements for the content of a summons:

The summons shall be signed by the clerk, be under the seal of the court, contain the name of the court and the name of the parties, be directed to the defendant, state the name and address of the plaintiff's attorney, if any, otherwise the plaintiff's address, and the time within which these rules require the defendant to appear and defend, and shall notify the defendant that in case of the defendant's failure to do so judgment by default will be rendered against the defendant for the relief demanded in the complaint....

RJO argues that the summons failed to meet the requirements of Rule 4(b) since it did not contain a return date, was directed to Sage, rather than RJO, listed the defendant as "THE SAGE GROUP, INC., et al," and, as a facsimile copy, was not under seal of the court.

We find O'Brien's service of process in this instance to be haphazard at best. It did give some notice, but other than containing the clerk's signature and the correct information regarding the plaintiff and his attorney, the summons does not satisfy the other requirements specified by the plain language of Rule 4(b). Any competent attorney who read and sought to comply with the Federal Rules of Civil Procedure would not have directed the service of such a summons. O'Brien was further remiss in not filing the return of service until seventeen months after service was completed.

■ However, as sloppy and deficient as we find O'Brien's conduct, RJO bears the responsibility of raising a challenge to the court's personal jurisdiction. Unlike subject matter jurisdiction, which as a restriction on federal power cannot be waived, personal jurisdiction is "a legal right protecting the individual," which the defendant may waive. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 704, 102 S.Ct. 2099, 2105, 72 L.Ed.2d 492 (1982). While a court may dismiss a case at any time for lack of subject matter jurisdiction, once the defendant has waived objections based on insufficiency of process and submitted generally to the jurisdiction of the court, the court is powerless to dismiss the suit for lack of personal jurisdiction. *See Pusey v. Dallas Corp.,* 938 F.2d 498, 501 (4th Cir.1991); *Pardazi v. Cullman Medical Center,* 896 F.2d 1313, 1317 (11th Cir.1990).

■ Fed.R.Civ.P. 12 sets forth the requirements for a timely challenge to the court's personal jurisdiction based on insufficiency of process. Pursuant to Rule 12(h)(1), a party must include a defense of insufficiency of process in its first Rule 12 motion or the defense is waived.[3] Before making its motion requesting dismissal of the default judgment due to alleged defects in the summons, RJO filed the March 1 Motion requesting that, pursuant to Rule 55(c), the court vacate the default order. The district court found that "RJO's ... Motion [submitted February 21, 1991 and filed March 1, 1991] was, in essence, a Rule 12 motion which required a consolidation of all Rule 12 grounds for dismissal." *O'Brien v. Sage Group, Inc.,* 141 F.R.D. at 83. On appeal, RJO does not contest that finding, but rather argues that it did not waive an objection based on the court's lack of personal jurisdiction because the March 1 Motion generally raised the insufficiency of process issue and, at the time of the motion, RJO was unaware of the specific defects in the summons.[4]

---

**3.** Rule 12(h)(1) mandates that "[a] defense of lack of jurisdiction over the person, ... insufficiency of process, or insufficiency of service of process is waived (A) if omitted from a motion in the circumstances described in subdivision (g)...." Fed.R.Civ.P. 12(h)(1).

Subdivision (g) provides, in part:
A party who makes a motion under this rule may join with it any other motion herein provided for and then available to him. If a party makes a motion under this rule but omits therefrom any defense or objection then available to him which this rule permits to be raised by the motion, he shall not thereafter make a motion based on the defense or objection so omitted...."
Fed.R.Civ.P. 12(g).

**4.** In addition to the contents of the March 1 Motion, RJO refers us to statements made by its counsel to the district court at the February 1, 1991 hearing, during which the default order was entered. Because Rule 12(h)(1) mandates

In support of its argument that the sufficiency of process issue was raised, RJO points to the following excerpt, among others, from its initial motion to vacate:

The return of service states that service of process was made upon Anita Burke. Ms. Burke is a receptionist at RJO; she is not an officer or director of RJO. Nor does any executive officer or compliance officer have any records or recollection that service was ever attained. Through other defendants, RJO has been made aware of this litigation shortly after it had been filed. RJO, though [sic] its counsel, periodically checked with the Court in Washington State, to determine whether the case was active, and whether any relief was being sought against RJO. The Clerk of that Court, on at least two occasions, advised counsel that, according to the Court's record, no service had been made on RJO. This information was consistent with RJO's belief that it had never been served. RJO can not dispute the affidavit of Service filed by Plaintiff, and, given the passage of time, is at a loss to adequately explain it's failure to respond to the summons which was apparently delivered to its office.

■ Objections to the sufficiency of process "must be specific and must point out in what manner the plaintiff has failed to satisfy the service provision utilized." *Photolab Corp. v. Simplex Specialty Co.*, 806 F.2d 807, 810 (8th Cir.1986). The above quoted language and the remainder of the motion failed to raise the personal jurisdiction issue as the court was not alerted in any way to the defects in the summons. The language in this matter simply states that given the presumptively valid return of service, RJO cannot explain its failure to respond. RJO's failure to proffer a reason for its default does

not preserve every conceivable explanation for such behavior, including the possibility that defects in its form made the summons unrecognizable. Furthermore, RJO's reply to O'Brien's answer to the March 1 Motion stated:

Plaintiff is incorrect when he asserts that RJO's motion "is fatally defective for lack of challenge to the fact of service of summons" (Page One of Plaintiff's Answer). RJO is not required to and does not challenge service.

Such language eliminates any possibility that RJO raised the personal jurisdiction issue when initially requesting that the court vacate the default order.

■ RJO further argues that at the time it submitted the motion, it was not aware of the defects in the summons, and thus could not have waived the sufficiency of process issue. We find this argument meritless. Rule 12(g) requires a party to consolidate in his first motion "any [Rule 12] defense or objection then available to him." *See Glater v. Eli Lilly & Co.*, 712 F.2d 735, 738 (1st Cir.1983) (the strict waiver directive of Rule 12(h)(1) only extends to those defenses "then available"). The glaring defects in the summons—the naming of the defendant as "THE SAGE GROUP, INC., et al," the directing of the summons to Sage, the failure to specify the number of days the defendant had to reply, and the delivery of a facsimile copy lacking the seal of the court—all were immediately apparent from the face of the summons, which the return of service indicates RJO received on August 23, 1989. Aside from the fact that the served summons was a facsimile copy, at the very least RJO could have detected the defects in the copy of the summons filed with the return of service on January 25, 1991.[5] Consequently, we find

that any challenge to personal jurisdiction based on insufficiency of process be raised in the first Rule 12 motion, even if counsel's comments concerning the general efficacy of process raised that issue, RJO waived any objection to the contents of the summons when it failed to assert those objections in its March 1 Motion.

5. RJO asserts that, until contacting the process server on April 8, 1991, it was unaware that a facsimile copy of the summons had been served. As a facsimile copy, the summons served on RJO

contained an image of the clerk of the court's signature, but apparently lacked the impressed seal of the court or a "copy" stamp. Even if we did not view this aspect of the sufficiency of process argument as waived, it is an open question whether this defect alone would have invalidated service since the clerk's signature assures the defendant that the summons was properly issued by the court. *Compare Kramer v. Scientific Control Corp.*, 365 F.Supp. 780, 788 (E.D.Pa. 1973) (absence of impressed seal on a photo-

that the defense of insufficiency of process was available to RJO at the time of its March 1 Motion. Having raised no objection at that time, RJO waived the issue of insufficiency of process and submitted to the court's jurisdiction.

### Refusal to Vacate for Good Cause

■ Fed.R.Civ.P. 55(c) provides:

For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

To succeed in the vacation of a default order under Rule 55(c), the defendant must show "(1) good cause for [its] default; (2) quick action to correct it; and (3) a meritorious defense to the plaintiff's complaint." *United States v. DiMucci,* 879 F.2d 1488, 1495 (7th Cir.1989). The same requirements, although more strictly applied, must be met to set aside a default judgment under Rule 60(b). *Id.*

RJO twice requested that the district court vacate the entry of default. As noted above, its March 1 Motion contended that RJO possessed a good faith reasonable belief that it never had been served, and thus good cause existed for vacating the default order. The district court denied the motion and entered default judgment against RJO. As the March 1 Motion was made before the district court entered judgment on the default, it clearly was a 55(c) motion directed to the entry of default. In the same April 11 Motion which contested personal jurisdiction based on insufficiency of process, RJO asked the district court to reconsider its denial of the initial motion to vacate in light of the newly raised defects in the form of the summons. In the alternative, RJO requested that the court vacate the default judgment pursuant to Rule 60(b). In denying RJO's April 11 Motion, the district court found that, given RJO's actual knowledge of the litigation, the defects in the summons did not provide good cause for its default in failing to file and answer the claim.

RJO's April 11 Motion could be viewed as a Rule 60(b) motion to vacate a default judgment because in its March 28, 1991 order denying RJO's first motion to vacate the default, the court entered judgment on that default against RJO. On the other hand, the April 11 Motion could be viewed as a Rule 55(c) motion, because Rule 60(b) only applies to final judgments and the district court had not yet certified the default judgment against RJO as final and appealable under Rule 54(b). *Federal Deposit Ins. Corp. v. Francisco Inv. Corp.,* 873 F.2d 474, 478 (1st Cir. 1989) (Rule 55(c) standard applies to a default judgment which has not been certified as final pursuant to Rule 54(b)). We need not decide this issue because even under the more liberal standard of Rule 55(c), RJO's April 11 Motion did not demonstrate good cause for its default.

■ We review the denial of both of the motions to vacate filed by RJO for an abuse of discretion. *Merrill Lynch,* 908 F.2d at 250. "To reverse the district court for an abuse of discretion, we must conclude that no reasonable person could agree with the trial court's judgment." *Id.* at 251. In conducting our review, we point out that this circuit no longer follows the earlier doctrine disfavoring defaults. *Matter of State Exchange Finance Co.,* 896 F.2d 1104, 1106 (7th Cir. 1990). In *Dimmitt & Owens Financial, Inc. v. United States,* we set forth the reasoning behind our reluctance to disturb the district court's ruling on a motion to vacate:

[In granting or denying a motion to vacate,] the judge is weighing the imponderables—the burden on his docket ..., the disturbance of expectations legitimately created by the default judgment, and the inroads on the general and essential principle that litigation must end, on the one hand, and on the other hand the injustice of allowing the default judgment to stand, which in turn is a function of both the

---

graphic copy of summons was not a fatal defect). *With United States v. National Muffler Mfg., Inc.,* 125 F.R.D. 453, 455 (N.D.Ohio 1989) (summons which lacked both the clerk's signature and the court's seal demonstrated complete disregard for Rule 4 requirements and could not be amended);

*Gianna Enterprises v. Miss World (Jersey) Ltd.,* 551 F.Supp. 1348, 1358 (S.D.N.Y.1982) (same). We need not decide this issue since the other blatant defects in the summons made the objection to personal jurisdiction available to RJO at the time of its March 1 Motion.

merits of the movant's substantive claims and the strength of his excuse for committing default. With the standard of decision so multifaceted, the appellate court's ability to fault the district judge's application of the standard is quite limited, and the scope of effective judicial review is therefore slight.

787 F.2d 1186, 1193 (7th Cir.1986).

██ In the present case, the district court did not abuse its discretion in denying either of RJO's motions to vacate because RJO failed to demonstrate good cause for its default. In considering RJO's March 1 Motion, the district court was presented with a return of service indicating that RJO had been served over seventeen months before the entry of default. RJO did not contest the return of service or offer any explanation for its failure to respond, but rather argued that its good faith reasonable belief it had not been served constituted good cause for its default as required under Rule 55(c). In support of this argument, RJO submitted an affidavit of Kenneth Lodge, one of its attorneys, which stated that an attorney for codefendant Sage had informed him that O'Brien had filed a complaint against RJO and Sage in the United States District Court for the State of Washington. After RJO told him it had not been served, Lodge called the clerk of the court in Washington state to inquire as to the status of the suit and was told that no relief against RJO was requested and no proof of service on RJO had been filed. Diligently following the suit, Lodge subsequently called the clerk again and verified that the return of service still had not been filed.

██ Even if these events resulted in RJO's honest belief that it had not been served, such a belief was unreasonable. Rule 4(g) does require the party serving process to promptly file proof of service with the court, but it expressly states that "[f]ailure to make proof of service does not affect the validity of service." Fed.R.Civ.P. 4(g). Because pursuant to Rule 4(g) RJO knew or should have known that O'Brien could neglect to file a return of service and yet proceed with the suit, RJO's belief that it had not been served, merely because a return of service had not been filed, was unreasonable.

To excuse a party's failure to respond to a summons because proof of service had not been filed would fly in the face of the explicit directive of Rule 4(g) that the failure to promptly file a return of service shall not effect the validity of the service. Thus, we cannot say the district court abused its discretion in refusing to vacate the entry of default.

RJO asserts that in finding that it unreasonably relied on the failure of O'Brien to file a return of service, the district court improperly imposed a duty on RJO to challenge the service of process prior to default. RJO contends that such a duty contradicts Rule 4 since "prior to proper service of process, a 'proposed defendant' has no duty to become involved in the case." We agree with RJO that until the completion of proper service, the defendant has no duty to appear. Nonetheless, RJO fails to address the crucial fact on which the district court relied at the time of the filing of the March 1 Motion—there was no reason to believe RJO had not been properly served. RJO did not contest that service did not occur, nor did it present the district court with any evidence that service of process had not been properly attained. Instead, RJO stated to the district court in its motion to vacate:

> RJO can not dispute the affidavit of service filed by Plaintiff, and, given the passage of time, is at a loss to adequately explain its failure to respond to summons which was apparently delivered to its office. However, RJO had been following the matter from a distance, consistent with its belief that no service had been attained, and if proof of service had been filed, RJO would have responded immediately.

The district court's refusal to vacate the default of a defendant who, based on the information available, had been properly served can hardly be seen as imposing a duty on a defendant to challenge service of process before proper service of process has been obtained. Rather, the district court correctly held that when a party fails to timely respond to a summons after being served, that party's default will not be excused by the plaintiff's failure to file a return of service.

In its April 11 Motion, RJO again requested that the district court set aside the default. While, as previously discussed, RJO waived any objection to personal jurisdiction based on insufficiency of process, RJO argued that the defects in the summons provided good cause for their default. RJO contended that as a result of the deficient summons, it "apparently failed to recognize it as a summons and treat it accordingly." On appeal, RJO argues that the district court abused its discretion in concluding that RJO's actual knowledge of the suit overcame the defects in the summons and prevented it from showing good cause existed for the default.

In support of this argument, RJO contends that *Mid–Continent Wood Products, Inc. v. Harris*, 936 F.2d 297 (7th Cir.1991), establishes that actual notice of a lawsuit does not equate to service of process, and thus, the district court erred by relying on RJO's actual notice of the suit in finding that good cause for the default did not exist. In *Mid–Continent*, after having difficulty locating the defendant, the server left a copy of the summons and complaint at what he believed was the defendant's address and later sent another copy to the same address via uncertified mail. *Id.* at 298. After the district court subsequently entered a default judgment against him, the defendant filed a motion for relief under Fed.R.Civ.P. 60(b)(4),[6] arguing that the district court lacked personal jurisdiction over him as a result of the deficient service of process. *Id.* at 299. The district court refused to vacate the default judgment in light of the defendant's actual knowledge of the lawsuit. *Id.* at 300. We held that the district court erred in refusing to vacate the default judgment because "actual knowledge of the existence of a lawsuit is insufficient to confer personal jurisdiction over the defendant in the absence of valid service of process." *Id.* at 301.

In relying on *Mid–Continent*, RJO ignores the procedural context in which its second motion to vacate was made. As discussed above, the first Rule 55(c) motion failed to object to the service of process or the content of the summons, and thus provided the district court with personal jurisdiction over RJO. In considering the second motion to vacate, the district court was not presented with the issue involved in *Mid–Continent*—whether the defendant's actual knowledge of the litigation conferred jurisdiction on the district court when process was not properly served. Rather, the district court in this case was asked to decide whether the alleged defects in the summons provided RJO with good cause for its default. Considering RJO's actual knowledge of the suit and submission to the court's jurisdiction, the district court did not abuse its discretion in refusing to vacate the default judgment.

Moreover, the court's proper exercise of discretion was buttressed by the fact that, in addition to possessing actual knowledge of the litigation, RJO had the means to determine whether process had been properly served. Fed.R.Civ.P. 4(j) provides in part:

> If a service of summons and complaint is not made upon the defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

When the return of service had not been filed after 120 days of the filing of the complaint, RJO called the clerk of the court in Washington and suggested that the court exercise its power under Rule 4(j) and dismiss the suit *sua sponte*. When the court declined to do so, RJO elected not to make a motion requesting dismissal pursuant to Rule 4(j). In defense of this decision, RJO asks "Why would any person who knows of the existence of a lawsuit, but honestly ... believes itself not to be served go before the court to challenge service?" The answer is this—if it turns out that the person's belief is incorrect and proper service has been obtained, he or she may end up in default.

RJO was faced with the decision of either filing a motion under Rule 4(j) to determine

**6.** Rule 60(b)(4) provides relief from a final judgment that is void.

whether it actually had been served or, in reliance on its belief that it not been served, sitting tight and hoping O'Brien would not pursue the suit. "A party is not free to ignore a suit, to appear only after he has been defaulted, and to say that the appearance must be treated as timely." *Kilgus*, 811 F.2d at 1118. With admitted knowledge of the litigation, RJO made a conscious decision to rely on O'Brien's failure to file a return of service rather than incur the expense of a Rule 4(j) motion. The district court was not compelled to relieve RJO of the consequences of its improvident tactical decision. *See Bruer Elec. Mfg. Co. v. Toronado Systems of America*, 687 F.2d 182, 185 (7th Cir.1982) (defendant's attempt to control and limit litigation expense by delaying answer failed to show good cause for default); *Kumar v. Ford*, 111 F.R.D. 34, 39 (S.D.N.Y. 1986) (defendant's deliberate choice to rely on ineffective service demonstrated willfulness of default and was a tactical decision that constituted neither mistake or excusable neglect under Rule 60(b)).

*Damages*

 "As a general rule, a default judgment establishes, as a matter of law, that defendants are liable to plaintiff as to each cause of action alleged in the complaint." *DiMucci*, 879 F.2d at 1497. *See also, Dundee Cement Co. v. Howard Pipe & Concrete Products Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). Before the entry of default judgment, Fed.R.Civ.P. 55(b)(2) provides for the district court, "as it deems necessary and proper," to conduct an evidentiary proceeding to determine the proper amount of damages. Such proceedings are required "unless the amount claimed is liquidated or capable of ascertainment from definite figures contained in documentary evidence or detailed affidavits." *Id.; Dundee*, 722 F.2d at 1323.

RJO asserts that the district court erred by not providing it with an opportunity to submit evidence regarding the proper amount of damages. As the record belies this assertion, we reject RJO's request that we vacate the default judgment and remand the case for an evidentiary hearing regarding damages.

In entering the default order on February 1, the district court scheduled a March 22 hearing to "prove-up" damages. When the parties appeared before the court on March 1 with regard to RJO's first motion to vacate, the district court again indicated that part of the proceedings on March 22 would entail a "prove-up" hearing. Finally, at the March 22 hearing, the following discussion occurred:

THE COURT: What is the status of the case, counsel?

MR. LOFTUS (for O'Brien): This is set here this morning on a prove-up against defendant, R.J. O'Brien. I would like to tender to the Court, if I may, an affidavit and a summary statement of the pleadings I drafted.

THE COURT: Do you have a response, counsel?

MR. SANDACK (for RJO): Your Honor, as I've seen counsel's filings, Judge, we've briefed a Rule 55(c) motion to set aside the default. Judge, I don't know if you've had—

THE COURT: When was it fully briefed?

MR. SANDACK: It's—

THE COURT: Or is it fully briefed?

MR. LOFTUS: Well, he filed his response to my reply, I think, on March 8th.

MR. SANDACK: That's correct, your Honor.

THE COURT: March 8th of this year?

MR. LOFTUS: That's correct, your Honor.

THE COURT: Okay, and that is to set aside the default?

MR. LOFTUS: Yes.

MR. SANDACK: Pursuant to Rule 55(c), your Honor, correct.

MR. LOFTUS: Judge, this was a default that was entered when counsel was present in Court. There was a 17–month delay after summons where they didn't appear.

THE COURT: Okay.

MR. LOFTUS: Counsel was in Court twice. That is the fourth time we've been here.

THE COURT: Your prove-up is by way of affidavit?

MR. LOFTUS: That's correct.

THE COURT: All right, I will do two things, decide the motion with respect to setting aside the default; if that motion is denied, then I will take into account your submissions as to whether to enter judgment upon the default. So, you will receive orders in the mail in due course.

MR. LOFTUS: I can make those filings now?

THE COURT: Yes, you can give those to Mr. Fulbright. So, in effect, the two motions are under advisement, and the Court will rule in due course.

The record indicates that despite several notices that the March 22 proceedings would include a "prove-up" hearing, RJO did not submit any evidence relating to damages. Furthermore, at no time did RJO object to O'Brien's written submission of evidence on the issue of damages or the court's statements that it would consider entering judgment on the default in the event the motion to vacate was denied. Thus, we find remand unnecessary—RJO had an opportunity to submit its position on the proper amount of damages at the March 22 "prove-up" hearing or seek a delay in decision on damages to allow it to submit such evidence; it failed to do either thus, in the absence of any contradicting evidence, the district court properly entered judgment limited to the amount O'Brien alleged in his complaint.

*Conclusion*

RJO asserts that it has received unfair and unequal treatment because the district court refused to vacate its default, after twice relieving O'Brien from dismissal for failure to attend scheduled hearings. The nature of litigation usually requires that one party win and the other lose. Well pleaded, well prepared and well presented cases sometimes place judges in the difficult position of choosing between two equally meritorious positions. On the other hand, when both parties ignore the rules of procedure and engage in slipshod practice, the court may necessarily be required to declare victorious a less than deserving party, which in this case is O'Brien.

Accordingly, the order of default and the entry of default judgment are AFFIRMED.