10 F.3d 806
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for
Hilton Head Bank and Trust Company, N.A.,
Plaintiff-Appellee,
v.
Edmund R. DANZIG, Defendant-Appellant,
and
Barrier Island Development Corporation; John F. Roche,
Defendants.
 No. 93-1294.
 United States Court of Appeals,
Fourth Circuit.
 Argued: September 27, 1993.
Decided: November 22, 1993.
 
 Appeal from the United States District Court for the District of South Carolina, at Beaufort.
 Fred Thompson, III, Scardato & Thompson, Charleston, South Carolina, for Appellant.
 Morris Arthur Ellison, Buist, Moore, Snythe & McGee, P.A., Charleston, South Carolina, for Appellee.
 Patricia L. Quentel, Buist, Moore, Smythe & McGee, P.A ., Charleston, South Carolina, for Appellee.
 D.S.C.
 AFFIRMED.
 Before PHILLIPS and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Edmund R. Danzig appeals from an order of the United States District Court for the District of South Carolina granting the Federal Deposit Insurance Corporation a default judgment in the amount of $291,869.48 against him and awarding the Federal Deposit Insurance Corporation attorneys' fees and costs in the amount of $32,697.27. We affirm.
 
 I.
 
 2
 Edmund R. Danzig (Danzig) assisted the Barrier Island Development Corporation (BIDC) in obtaining financing for various real estate ventures, and was compensated well by BIDC for this assistance. Among the financing that Danzig helped BIDC obtain were two loans provided by the Hilton Head Bank & Trust Co. (HHB & T) in the amounts of $220,000 and $400,000, both of which Danzig admits guaranteeing. J.A. at 122-23; 127-29. In early April 1988, HHB & T gave notice to Danzig and John Roche (Roche), the president of BIDC who had also guaranteed the loan, that the $220,000 loan was due and payable on April 15th of that year.[1] As of July 30, 1990, neither BIDC, Roche nor Danzig had made good on their debt, and HHB & T served a summons and complaint to all three.
 
 
 3
 On September 10, 1990, Danzig moved unsuccessfully to dismiss HHB & T's state-court action against him for lack of personal jurisdiction. Subsequently, the Federal Deposit Insurance Corporation (FDIC) placed HHB & T into receivership, and, after replacing HHB & T as the plaintiff in the action against Danzig,[2] removed the case to the United States District Court for the District of South Carolina pursuant to 12 U.S.C. Sec. 1819(b)(2)(B). Soon thereafter, Danzig's attorneys, who had previously sought to withdraw as Danzig's counsel while in state court, petitioned the district court for leave to withdraw. In a written order dated November 26, 1991, the district court granted counsel's motion to withdraw, but delayed effect of the order and stayed all proceedings until December 16, 1991 to provide Danzig the opportunity to come to terms with his attorneys. The court further ordered that "if Mr. Danzig is unable to retain his current counsel by December 16, 1991, he must answer the complaint of the plaintiff herein by January 17, 1992, either pro se, or by substitute counsel." J.A. at 49.
 
 
 4
 Danzig admits receiving the district court's order and being aware of the court's express deadline by which he had to answer FDIC's complaint. Id. at 102, 73. Notwithstanding the court's explicit instructions, however, Danzig failed to answer by the January 17 deadline, and on January 27 FDIC moved for a default judgment. Danzig opposed the FDIC's motion, claiming that he had failed to file an answer within the expressly prescribed deadline only because he was waiting to receive an amended complaint from the FDIC before responding. After a hearing, a magistrate-judge rejected Danzig's excuse, finding that Danzig failed to demonstrate the existence of "mistakes, inadvertence, surprise, excusable neglect, good cause or any other reason justifying relief" from default. Id. at 89. The district court adopted the magistrate's report and ultimately entered a judgment against Danzig in the amount of $291,869.48 plus attorneys' fees of $32,697.27. Id. at 200-201, 285-292. This appeal followed.
 
 II.
 
 5
 Danzig challenges the default judgment against him, contending that the magistrate applied the incorrect standard in refusing to grant him relief from default.[3] We disagree.
 
 
 6
 Inasmuch as Danzig argues that the magistrate should have assessed his opposition to default under Rule 55(c)'s "good cause" standard, he is certainly correct. See Fed. R. Civ. P. 55(c).[4] Where, as here, a court is ruling upon a plaintiff's application for a default judgment, it properly treats the defendant's opposition as a motion to set aside the entry of a default, which is assessed under Rule 55(c)'s good cause standard. E.g., Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981).[5]
 
 
 7
 But the magistrate did not, as Danzig contends, commit reversible error in rejecting Danzig's excuse for default. Although the magistrate appeared to apply Rule 60(b), the standard for granting relief from a default judgment, see Fed. R. Civ. P. 55(c), it is clear from the record that, in reaching its ultimate conclusion, the magistrate specifically found that Danzig failed to demonstrate good cause for his default, the precise showing required for setting aside an entry of default under Rule 55(c). As the magistrate concluded, "[t]here has been no showing of mistakes, inadvertence, surprise, excusable neglect, good cause or any other reason justifying relief" from Danzig's default. J.A. at 89 (emphasis added).
 
 
 8
 Moreover, even assuming that the magistrate failed altogether to conduct Rule 55(c)'s good cause inquiry, it did not commit reversible error. In applying the Rule 60(b) standard, which allows a court to grant relief from a default judgment for any reason whatsoever, Fed. R. Civ. P. 60(b)(6), the magistrate necessarily considered any excuse that Danzig might have proffered under Rule 55(c) as"good cause" for his default. See, e.g., Waifersong, Ltd. v. Classic Music Vending, 976 F.2d 290, 292 (6th Cir. 1992) (similar factors, although different standard by which to judge them, under 55(c) and 60(b)). Although the threshold for accepting an excuse as grounds for relief under Rule 60(b), where a judgment has already been entered, is generally accepted to be somewhat stricter than the standard under Rule 55(c), e.g., id.; Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 375 n.5 (D.C. Cir. 1980), it is beyond question that even under the stricter standard the magistrate would have denied Danzig relief, and properly so. The court's order directing Danzig to answer by January 17 could not have been clearer, and Danzig's only excuse for his neglect-that he expected a copy of an amended complaint in order to respond-is neither credible nor sufficient. The magistrate expressly rejected this excuse as altogether unsupported:
 
 
 9
 Danzig's only excuse, that he did not receive the complaint, is totally refuted by the affidavits of record and the order of Judge Norton, and it is clear that Danzig is not entitled to relief from the default judgment because he has failed to offer an acceptable excuse.
 
 
 10
 ...
 
 
 11
 [T]he fault in this instance lies squarely at Danzig's feet. Indeed, the position Danzig finds himself in today is of his own making.
 
 
 12
 J.A. at 88-89 (emphasis added). The magistrate-judge clearly was convinced that Danzig had failed to show any cause, let alone good cause under Rule 55(c), justifying his default.[6] Because there is no question that the magistrate would have rejected Danzig's excuse for default had it expressly and exclusively applied the good cause standard, any error the magistrate might have committed in applying Rule 60(b) was harmless.
 
 CONCLUSION
 
 13
 For the reasons stated herein, we affirm the judgment of the district court.
 
 AFFIRMED
 
 
 [1]
 The $400,000 loan apparently was never funded
 
 
 [2]
 BIDC and Roche both failed to answer HHB & T's complaint and were placed in default
 
 
 [3]
 Danzig also contends that his state court motion to dismiss constituted an answer in federal court. Additionally, he challenges the district court's award of attorneys' fees and costs. Both arguments are without merit
 
 
 [4]
 Rule 55(c) provides as follows:
 (c) Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).
 
 
 [5]
 This is so because of the two-step process by which a default judgment is entered. First, under Rule 55(a), the clerk enters a party's default when that party "has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise." Fed. R. Civ. P. 55(a). After entry of the default, and upon application by the non-defaulting party, a default judgment may be entered. Fed. R. Civ. P. 55(b). When the defaulting party opposes the entry of a default judgment, therefore, that party is effectively petitioning the court not merely to refrain from entering a default judgment, but also to set aside the entry of the default, which typically must be done before resuming the proceeding. Cf. Orange Theatre Corp. v. Rayherstz Amusement Corp., 130 F.2d 185, 187 (3d Cir. 1942) (defendant who had not answered within prescribed time limit must petition court for relief from default before proceeding, even where default never entered and parties stipulated as to enlargement of time); Gray v. John Jovino Co., 84 F.R.D. 46, 47 (D.C. Tenn. 1979) (same)
 Here, the FDIC presented its affidavit of default, request for entry of default and request for default judgment all in the same motion. Whenthe magistrate ruled on this motion, the clerk had not actually entered Danzig's default. Because, as the magistrate properly noted, this was but a technical or ministerial omission, the proper course was to treat Danzig's motion as if a default had been entered. See Meehan, 652 F.2d at 276.
 
 
 [6]
 The magistrate also concluded that Danzig had presented no evidence that he had a meritorious defense to FDIC's cause of action. J.A. at 88. Because courts require a defaulting party to show a meritorious defense to the action in addition to good cause in order to set aside an entry of default, e.g., O'Brien v. R.J. O'Brien & Associates, Inc., 998 F.2d 1394, 1401 (7th Cir. 1993), the magistrate would not have granted Danzig relief under Rule 55(c) even if it had found good cause for Danzig's default