**Jerome L. SCHMIDT, and Laura A. Schmidt, Plaintiffs,**

v.

**Patrick J. HUDEC, Mary Hudec, and United States of America, Defendants.**

No. 05–CV–605.

United States District Court, E.D. Wisconsin.

March 12, 2007.

---

Lisle W. Blackbourn, Michael J. Frazier, Anthony A. Coletti, Godfrey Leibsle Blackbourn & Howarth SC, Elkhorn, WI, for Plaintiffs.

Patrick J. Hudec, Hudec Law Offices, East Troy, WI, Laquita J. Taylor–Phillips, United States Department of Justice, Washington, DC, for Defendants.

## ORDER

STADTMUELLER, District Judge.

On May 16, 2005, plaintiffs Jerome and Laura Schmidt filed an amended complaint in the Circuit Court of Walworth County, Wisconsin, Case No. 04–CV–01077, against defendants Patrick and Mary Hudec and the United States. The plaintiffs' amended complaint seeks the dissolution of a partnership operated by Jerome Schmidt ("Schmidt") and Patrick Hudec ("Hudec") and the partition and sale of a parcel of real property owned by the partnership. (Am.Compl.2–7.) The amended complaint states that the United States may claim an interest in the property by virtue of an unsatisfied federal tax lien. (Am. Compl.¶ 28). Pursuant to 28 U.S.C. §§ 1441 and 1444, the United States removed this action to this court on June 3, 2005. As provided in 28 U.S.C. § 2410, the district court has jurisdiction over an action to partition property on which the United States claims a tax lien. *See id.*

Several motions are before the court. On May 31, 2006, the plaintiffs filed a motion for default judgment and a motion for summary judgment. On August 28, 2006, Patrick and Mary Hudec filed a cross-motion for summary judgment. And

on December 5, 2006, the United States filed a motion for summary judgment. No response was filed to the United States' motion for summary judgment. For the reasons stated below, the court will deny the Hudecs' motion for summary judgment and grant the plaintiffs' and the United States' motions for summary judgment.

## BACKGROUND

Because the Hudecs did not file a response to the plaintiffs' proposed findings of fact or the United States' proposed findings of fact, the following facts are deemed to be undisputed. *See* Civil L.R. (E.D.Wis.) 56(e); *Anders v. Waste Mgmt. of Wis., Inc.*, 463 F.3d 670, 671–72 (7th Cir.2006).

In the early 1990s, Schmidt and Hudec formed a business partnership under the name of Schmidt–Hudec Investments. The partnership owns real property located in the Village of East Troy, Walworth County, Wisconsin, which is legally described as follows: Lots 12, 13 and 14, Block A, Lenck's Park Addition to the Village of East Troy, Walworth County, Wisconsin, (also known as 307–82 West Main Street and 2111 Lenck Street, Village of East Troy, Walworth County, Wisconsin). Schmidt and Hudec purchased the property in October 1991, and took title in the names of Jerome L. Schmidt and Patrick J. Hudec. Schmidt and Hudec operated the building on the property in two sections which Schmidt and Hudec separately managed and leased, except for certain common expenses and management issues, including taxes, insurance, and common area maintenance.

Under the partnership agreement between Schmidt and Hudec, Schmidt owns 55 percent of the assets of the partnership and is responsible for 55 percent of partnership liabilities, and Hudec owns 45 percent of the assets of the partnership and is responsible for 45 percent of partnership liabilities. Schmidt and Hudec based their percent ownership in the property on their agreed allocation of the value of the two sections of the property and on their contribution to the purchase price of the property.

In 1998, Schmidt and Hudec agreed to terminate the partnership and sever their business interests. Schmidt and Hudec agreed to convert the property to condominium ownership with Schmidt and Hudec owning separate units. As a practicing attorney at the time, Hudec agreed to act as the partnership's attorney in preparing a condominium declaration and other documents needed to carry out Schmidt and Hudec's plan to convert the property to condominium ownership.[1]

On July 31, 1998, Schmidt and Hudec executed a partnership resolution providing for the dissolution of the partnership and distribution of its asset, the property, in the form of condominium units consisting of the Schmidt Unit and the Hudec Unit, respectively. (Frazier Aff. Ex. C.) An attorney then working at Hudec Law Offices, S.C., prepared a draft of a declaration of condominium ownership for the property. (*Id.* Ex. E.) On August 19, 1998, a surveyor prepared a condominium plat for the property designating the Schmidt Unit as "Unit 1" and the Hudec Unit as "Unit 2," and depicting the remaining areas of the property as limited common areas. (*Id.* Ex. D.) The condominium plat was approved by officials of the Village of East Troy on August 22, 1998. (*Id.*) However, the Village's approval

---

1. In September 2005, Hudec voluntarily suspended his license to practice law in the state of Wisconsin for health reasons.

subsequently expired, and as a result, the August 1998 condominium plat was never recorded with the Walworth County Register of Deeds. *(Id.* Ex. G, 9–10.)

Schmidt and Hudec attempted to convert the property to condominium ownership again in 2003. On May 29, 2003, Schmidt and Hudec executed a declaration of condominium, prepared by an attorney at Hudec Law Offices, S.C. *(Id.* Ex. F.) In the fall of 2003, Hudec sent the declaration of condominium to the Walworth County Register of Deeds Office for recording; however, the Walworth County Register of Deeds Office refused to record the declaration of condominium because it failed to conform to statutory requirements applicable at the time. As a result, the declaration of condominium was never recorded with the Walworth County Register of Deeds, the property was never converted to condominium ownership, and the property remains a partnership asset.

In 2004, Schmidt, unaware that the property had not been converted to condominium ownership, obtained a buyer interested in purchasing what he believed to be his condominium unit of the property. Upon obtaining a title search in July 2004, Schmidt learned that the property had never been converted to condominium ownership. As a result, Schmidt was unable to sell his interest in the property.

The parties have tried unsuccessfully to negotiate the sale of Hudec's interest in the property to Schmidt. (Schmidt Aff. ¶ 14.) Schmidt now desires to end his business relationship with Hudec entirely, dissolve the partnership, and obtain a distribution of partnership assets through the liquidation of the property.

After Schmidt and Hudec agreed to convert the property to condominium ownership, they agreed to pay the real estate taxes separately with Schmidt paying 55 percent of the real estate taxes each sub-sequent year. Hudec, however, failed to pay his 45 percent share of the real estate taxes. As of July 2004, real estate taxes for the property for the year 2002 were delinquent in the amount of $2,121.75, and real estate taxes for the property for the year 2003 were delinquent in the amount of $2,115.83. (Frazier Aff. Ex. A.) The delinquent real estate taxes correspond to the 45 percent share of the real estate taxes owed by Hudec.

On February 24, 2003, and September 1, 2003, federal income taxes were assessed against Hudec for the 1999 and 2000 years, respectively. On June 25, 2004, the Internal Revenue Service filed a notice of federal tax lien in the amount of $334,730.82 against Hudec in connection with those assessments. (Government Ex. D.) Despite these notices and demands for payment of the assessments, Hudec has neglected, failed, or refused to pay the liabilities. Consequently, Hudec currently owes to the United States $222,577.68, plus statutory interest and additions accruing from March 6, 2006. (Government Exs. C, E, and F.) The federal tax lien is not a partnership debt; rather, it is Hudec's personal debt. The United States, through its attorney, has agreed that upon sale of the property, the United States will exercise its lien only against Hudec's ownership interest in the property. (Frazier Aff. ¶ 10.)

## ANALYSIS

In their motion for default judgment, the plaintiffs assert that defendants Patrick and Mary Hudec are in default because they did not file their answer to the plaintiffs' amended complaint within the time limits set forth in Fed.R.Civ.P. 12(a) or Wis. Stat. § 802.06(1). The plaintiffs filed a copy of the Hudecs' answer to their amended complaint in this court on May 16, 2006. The Hudecs' filed their answer

to the plaintiffs' amended complaint in Walworth County Circuit Court, but did not file a copy of their answer in this court. The United States filed a response to the plaintiffs' motion for default judgment indicating that it does not take a position on the motion. Defendants Patrick and Mary Hudec did not file a response to the plaintiffs' motion for default judgment.

■■■ The decision to enter default lies within the district court's discretion. *O'Brien v. R.J. O'Brien & Assocs., Inc.,* 998 F.2d 1394, 1398 (7th Cir.1993). Because a default judgment is a harsh sanction, it should be employed only in extreme situations when other less drastic sanctions have proven unavailing. *Silva v. City of Madison,* 69 F.3d 1368, 1377 (7th Cir.1995).

■■■ A review of the procedural history of this case in the Walworth County Circuit Court reveals that the plaintiffs were served with a copy of Hudecs' answer approximately 25 days after the plaintiffs filed their amended complaint. *See Schmidt v. Hudec,* Case No. 04–CV–01077 (Cir. Ct. of Walworth Co. Wis.2005). The plaintiffs filed an amended summons and complaint on June 10, 2005, in Walworth County Circuit Court. The Hudecs served a copy of their answer to the amended complaint upon plaintiffs' counsel by mail on July 5, 2005, and filed their answer in Walworth County Circuit Court on July 7, 2005. (Answer to Am. Compl. 2.) Because the plaintiffs were provided a copy of the Hudecs' answer, it appears the plaintiffs were not prejudiced by the Hudecs' filing their answer in the state court rather than in this court. Additionally, under Fed. R.Civ.P. 81(c), repleading is not necessary unless the court so orders. *Id.; see also Zic v. Italian Gov't Travel Office,* 130 F.Supp.2d 991, 995 n. 2 (N.D.Ill.2001). Considering the unique procedural posture of the case as well as the lack of prejudice

to the plaintiffs, the court will deny the plaintiffs' motion for default judgment.

The plaintiffs also filed a motion for summary judgment on May 31, 2006. The plaintiffs move the court to find, as a matter of law, that: (1) the property that is the subject of this litigation should be sold and (2) 55 percent of the net sale proceeds should be distributed to plaintiff Jerome Schmidt and the remaining 45 percent to defendant Patrick Hudec, subject to the interest of the United States. The United States filed a response to the motion for summary judgment indicating that it does not oppose the plaintiffs' motion.

On August 28, 2006, defendants Patrick and Mary Hudec filed an untimely response to the plaintiffs' motion for summary judgment and a cross-motion for summary judgment. Patrick and Mary Hudec assert that selling the property would be contrary to the parties' original agreement and would result in an extraordinary windfall to the plaintiffs.

On December 5, 2006, the United States filed a motion for summary judgment seeking an order stating that the United States: (1) has valid and existing federal tax liens on the property which is at the center of the dispute in this case and (2) is entitled to defendant Hudec's portion of any net sale proceeds from that property to partially satisfy his federal tax liabilities. No response to the United States' motion for summary judgment was filed. The court will address each parties' motion for summary judgment in turn.

Summary judgment is appropriate where the moving party establishes that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Material facts" are those facts which

"might affect the outcome of the suit," and a dispute about a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex,* 106 S.Ct. at 2556–57. A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

In the instant case, it is undisputed that the property at issue is owned by the partnership, not by multiple parties. It is also undisputed that Schmidt and Hudec have a 55 percent and 45 percent interest in the partnership assets, respectively. As a partner in a partnership at will, Schmidt asserts that he is entitled to an order declaring dissolution of the partnership and ordering sale of the property, with 55 percent of the net proceeds distributed to Schmidt.

Defendants Patrick and Mary Hudec filed an untimely response to the plaintiffs' motion for summary judgment. Along with their response, the Hudecs filed a cross-motion for summary judgment. The Hudecs seek an order compelling the parties to hire an attorney of their choosing to complete the conversion of the property to condominium ownership in accordance with the parties' original intent. Hudec states that the tax lien would be allocated to only his interests after the conversion. Hudec asserts that selling the property is contrary to the parties' original agreement and would result in an extraordinary windfall to the plaintiffs. In support of this claim, Hudec states that he has maintained his share of the property in a manner that has substantially increased the value of that portion of the property. Specifically, Hudec states he replaced the roof over his portion of the property at the cost of approximately $15,000. (Hudec Aff. ¶ E.) Thus, Hudec asserts, if the property is sold as one unit, Schmidt would benefit from Hudec's improvements. Finally, Hudec contends that Schmidt is attempting to take advantage of a situation that Schmidt is partly to blame for. Specifically, Hudec states that after his unsuccessful attempts to convert the property to condominium ownership, Schmidt refused to hire and share the expense of having another attorney complete the filing of the condominium declaration.

A party opposing summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R.Civ.P. 56(e). Here, the Hudecs present no specific facts to support their claims that an order for the sale of the property would be a windfall for the plaintiffs. For example, the Hudecs have not filed a copy of any partnership agreement indicating that a sale would be contrary to the parties' original intent. In addition, while the parties agreed to dissolve the partnership and convert the property to condominium ownership in 1998, well after they formed the partnership, that was before Schmidt learned that Hudec had stopped paying his share of the real estate taxes. (Frazier Aff. Ex. C; Schmidt Aff. ¶¶ 11–12.) Furthermore, Hudec failed to inform Schmidt that the property had not been converted to condominium ownership as planned in their 1998 dissolution agreement and the 2003 declaration of condominium. *(Id.)* In

light of those developments, it is understandable that Schmidt would prefer to dissolve the partnership and terminate his business relationship with Hudec instead of operating a condominium unit which would necessarily require Schmidt and Hudec to continue to have common interests in the common areas of the condominium and membership in a condominium association. For these same reasons, the plaintiffs assert that dividing the property into condominium units would not provide a satisfactory remedy in this case. As such, the plaintiffs seek an order directing the parties to sell the property and divide the proceeds according to their percent ownership interests.

Despite a court order dated February 8, 2007, directing Hudec to respond to the plaintiffs' document requests and interrogatories, Hudec failed to respond to these discovery requests. In their discovery requests, the plaintiffs sought information regarding the Hudecs' claims set forth in their motion for summary judgment, including information about any partnership agreement, any agreement Hudec had with the government regarding his tax liens, Hudec's claim that he maintained his share of the property in a manner that substantially increased the value of his portion of the property, and Hudec's claim that a sale of the property would be a windfall to the plaintiffs. However, as indicated above, Hudec failed to respond to these requests or otherwise provide evidence to support his claims.

The Wisconsin Uniform Partnership Act provides that, absent a contrary agreement, a partnership with no definite term or particular undertaking may be dissolved by the express will of any party. Wis. Stat. § 178.26(1)(b). Upon dissolution, each partner is entitled to have partnership assets applied to discharge partnership liabilities and the surplus paid in cash to the partners. Wis. Stat. § 178.33; *Dreifuerst v. Dreifuerst*, 90 Wis.2d 566, 572–73, 280 N.W.2d 335, 339 (Wis.Ct.App. 1979). Unless otherwise agreed, "any partner who has not wrongfully dissolved the partnership has the right to wind up the partnership and force liquidation, he likewise has a right to force a sale...." *Dreifuerst*, 90 Wis.2d at 573, 280 N.W.2d at 339; *see also* Wis. Stat. § 178.32.

■■■ Winding-up, often called liquidation, is the process of settling partnership affairs after dissolution and involves reducing the assets to cash to pay creditors and distribute to partners the value of their respective interests. *Dreifuerst*, 90 Wis.2d at 570, 280 N.W.2d at 338. As the court in *Dreifuerst* noted, a sale of a partnership's assets is the preferred method of liquidation because a sale protects a creditor's right to collect a debt owed "since the assets of the partnership, as a whole, may be worth more than the assets once divided up," and "a sale provides a more accurate means of establishing the market value of the assets and, thus, better assuring each partner his share in the value of the assets." *Id.* at 572, 280 N.W.2d at 338; *see also La Rene v. La Rene*, 133 Wis.2d 115, 121, 394 N.W.2d 742, 744 (Wis.Ct.App. 1986) (holding that property could not be equitably divided by size or value and that sale of the property was the best method of liquidating the assets).

■■ Because the Hudecs failed to respond to the plaintiffs' discovery requests and to provide any evidentiary support for their claims, the court is obliged to deny the Hudecs' motion for summary judgment and grant the plaintiffs' motion for summary judgment. The record demonstrates that Schmidt–Hudec partnership is a partnership at will. As such, the partnership may be dissolved by the express will of any party, in this case Schmidt. *See* Wis. Stat. § 178.26(1)(b). In addition, Hudec

has not presented a partnership agreement or otherwise demonstrated that there is an agreement preventing Schmidt, a partner who has not wrongfully dissolved the partnership, from forcing a sale of the partnership asset, the property. As such, the court will order the partnership dissolved and the sale of the partnership assets. Upon dissolution, Schmidt is entitled to have 55 percent of the net sale proceeds distributed to him. *See* Wis. Stat. § 178.33; *Dreifuerst,* 90 Wis.2d at 572–73, 280 N.W.2d at 339.

In the United States' unopposed motion for summary judgment, the United States seeks an order stating that the United States: (1) has valid and existing federal tax liens on the property which is at the center of the dispute in this case and (2) is entitled to defendant Hudec's portion of any net sale proceeds from that property to partially satisfy his federal tax liabilities.

It is undisputed that the United States has valid and existing tax liens on the property in dispute. Section 6321 of the Internal Revenue Code of 1986 imposes a lien upon all property and rights to property belonging to a liable taxpayer. 26 U.S.C. § 6321. The lien arises upon assessment and continues until the taxpayer's liability is satisfied or becomes unenforceable. 26 U.S.C. § 6322; *United States v. Natl. Bank of Commerce,* 472 U.S. 713, 719, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985).

■■ The guidelines for making an assessment are provided in 26 U.S.C. § 6203 and Treasury Regulation § 301.6203–1. The Internal Revenue Service's Certificates of Assessments and Payments meet the requirements of those provisions and establish the fact of assessment. *Hefti v. IRS,* 8 F.3d 1169, 1172 (7th Cir.1993). The IRS's Certificates of Assessments and Payments are presumed correct. *United*

*States v. Hoffman,* 643 F.Supp. 346, 348 (E.D.Wis.1986) (citing *Welch v. Helvering,* 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933)).

The United States has submitted certified IRS Certificates of Assessments and Payments for Hudec's 1999 and 2000 income tax years. (Government Exs. A and B.) The certificates identify Hudec as the taxpayer, the type of tax assessed, and the relevant tax period. *(Id.)* The certificates also contain a column that shows for the respective year all of Hudec's assessments and payments and the assessment dates. *(Id.)* The certificates demonstrate that income taxes were assessed against Hudec on February 24, 2003 and September 1, 2003, for the years 1999 and 2000, respectively. *(Id.)* They also reflect that the income taxes were assessed in the amounts of $111,812 and $180,981 for the 1999 and 2000 years, respectively. *(Id.)*

■ On November 7, 2006, the court ordered Hudec to respond to the United States' First Request for Admissions with sufficient and complete answers. Hudec, however, did not respond to the requests for admissions. Consequently, in accordance with the November 7, 2006 order, the United States' requests for admission are deemed admitted. Thus, Hudec has admitted that the above assessments were made against him. He has also admitted that he has neglected, failed, or refused to pay the assessed liabilities, and consequently, he owes the United States $222,577.68, plus statutory interest and additions accruing from March 6, 2006. (Government Exs. C, E, and F.)

■ In accordance with 26 U.S.C. §§ 6321 and 6322, by virtue of the tax assessments made against Hudec, federal tax liens arose on all property and rights to property belonging to him, including the property at the center of this dispute. Those liens remain on that property until

Hudec's income tax liability is satisfied to the extent of his interest in the property. Thus, by virtue of the federal tax liens, the United States has an interest in Hudec's portion of any sale proceeds from the property to the extent of Hudec's federal tax liability. *See United States v. Rodgers,* 461 U.S. 677, 690–91, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). In light of the foregoing, the court concludes that the United States is entitled to Hudec's portion of the net proceeds from the sale of the property. Specifically, because Hudec has a 45 percent interest in the property, the United States is entitled to 45 percent of any net sale proceeds from the sale of the property for partial payment of Hudec's unpaid tax debt.

In conclusion, viewing the facts in the light most favorable to the Hudecs as the record permits, the court concludes that there is no genuine issue of material fact and the Schmidts and the United States are entitled to judgment as a matter of law. As such, the court is obliged to deny the Hudecs' motion for summary judgment and grant the plaintiffs' and the United States' motions for summary judgment. Accordingly, the court hereby orders that the Schmidt–Hudec Investments partnership shall be dissolved pursuant to Wis. Stat. § 178.26(1)(b). As part of the winding-up process of the partnership, the partnership's asset, the real property located in the Village of East Troy, Walworth County, Wisconsin, which is legally described as follows: Lots 12, 13 and 14, Block A, Lenck's Park Addition to the Village of East Troy, Walworth County, Wisconsin, (also known as 307–82 West Main Street and 2111 Lenck Street, Village of East Troy, Walworth County, Wisconsin), shall be sold pursuant to Wis. Stat. §§ 178.32 and 178.33(1). Schmidt is entitled to 55 percent of the net sale proceeds from the sale of the property, and the United States is entitled to 45 percent of the net sale proceeds from the sale of the

property for partial payment of Hudec's unpaid tax debt.

Accordingly,

**IT IS ORDERED** that the plaintiffs' motion for default judgment (Docket # 14) be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that the defendants Mary and Patrick Hudec's motion for summary judgment (Docket # 38) be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that the plaintiffs' motion for summary judgment (Docket # 15) be and the same is hereby **GRANTED.** The Schmidt–Hudec Investments partnership shall be dissolved pursuant to Wis. Stat. § 178.26(1)(b). As part of the winding-up process of the partnership, the partnership's asset, the real property located in the Village of East Troy, Walworth County, Wisconsin, which is legally described as follows: Lots 12, 13 and 14, Block A, Lenck's Park Addition to the Village of East Troy, Walworth County, Wisconsin, shall be sold pursuant to Wis. Stat. §§ 178.32 and 178.33(1). Schmidt is entitled to 55 percent of the net sale proceeds from the sale of the property.

**IT IS FURTHER ORDERED** that the defendant United States' motion for summary judgment (Docket # 44) be and the same is hereby **GRANTED.** Pursuant to the valid and existing tax liens on the property described above, the United States is entitled to 45 percent of the net sale proceeds from the sale of the property for partial payment of Hudec's unpaid tax debt. The balance of this action be and the same is hereby **DISMISSED** with prejudice, together with costs as taxed by the clerk.

The clerk of the court is directed to enter judgment accordingly.