# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-4205

LISA HOMER,

*Defendant-Appellant,*

v.

NATHANIEL JONES-BEY,

*Plaintiff-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 98-C-485—**Robert L. Miller, Jr.**, *Chief Judge.*

———————

ARGUED MAY 13, 2005—DECIDED JULY 22, 2005

———————

Before CUDAHY, EASTERBROOK and KANNE, *Circuit Judges.*

CUDAHY, *Circuit Judge.* Defendant Lisa Homer, who was named (as "Lisa Hommer") as a defendant in Plaintiff Jones-Bey's prisoner suit alleging deliberate disregard of his medical needs, appeals the entry of a default judgment against her and the denial of her subsequent Rule 60(b) motion to set aside that judgment. Homer claims that she was never served with process in the suit. For the reasons that follow, we vacate the judgment and remand for further proceedings.

## I.  FACTUAL BACKGROUND AND DISPOSITION BELOW

Most of the basic facts underlying this appeal are straightforward. On June 30, 1999, plaintiff Nathaniel Jones-Bey, a state prisoner, filed a lawsuit alleging that Indiana Maximum Control Facility (MCF) nurse "Lisa Hommer" and two other defendants had been deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. "Lisa Hommer" entered no appearance in the case, which went to a jury trial on February 25, 2002. The district court docket records a "RETURN OF SERVICE executed upon defendant Lisa Hommer on 10/30/99." At trial the district court granted both of Homer's co-defendants judgment as a matter of law, but also granted Jones-Bey's motion for a default judgment against "Hommer." The jury awarded $40,000 in damages against "Hommer" on March 7, 2002.

After some procedural wrangling about Jones-Bey's attempt to pursue proceedings supplemental against "Lisa Hommer," the matter was finally set for a hearing in September of 2003. Lisa Homer was served with a summons on September 16, 2003, and the return of service was filed with the court on the next day. The summons identified Homer as the "Judgment Debtor" and instructed her to appear in federal court "to answer concerning the judgment debtor's property, income, and profits." `

After multiple continuances, the court granted Jones-Bey's motion to initiate a garnishment hearing against "Hommer" on June 1, 2004. On June 7, 2004, Lisa Homer appeared by counsel and moved the district court, pursuant to Federal Rule of Procedure 60(b), to set aside the default judgment against her for lack of personal jurisdiction and to dismiss the action against her. Specifically, Homer argued that she was never properly served with process in connection with the 1999 lawsuit, and thus that the default

judgment entered against her was void. Homer submitted her own declaration averring that her name was not "Lisa Hommer," that she had not worked at the MCF in Westville, Indiana since July 1998 and that she had not been served in 1999 with a copy of the complaint or summons that ultimately led to the default judgment against her. She stated that she had no knowledge whatsoever of the existence of that action until she was served with process identifying her as the "Judgment Debtor" in September 2003.

Jones responded on August 13, 2004. Attached to the response was a Declaration by Paul Joseph of the U.S. Marshals Service, who stated that he had handled the summons to "Lisa Hommer" in October of 1999. He stated that he had learned from the MCF that "Lisa Homer" no longer worked there, and he sent the summons to Homer's last known residential address as provided by the MCF. Consistent with the practice of the Marshals Service (for security reasons), Joseph stated that he had not noted the address on the summons. He recited that he had received the signed return receipt for the summons from the posted address on October 30, 1999, and that it had been signed by someone named "Homer." Joseph also declared that he was familiar with Homer's address because he had sent her several certified postings during 1999, and that he sent the 2003 summons (which Homer did receive) to the same address he had used in 1999.

Attached to Joseph's declaration was a copy of the "PROCESS RECEIPT AND RETURN" form ordering service of process on "Lisa Hommer" at the MCF facility, signed by an "L. Jozaite" and dated October 29, 1999. Apparently believing that Homer still worked at the MCF facility, Jones-Bey had initially attempted, via the Marshals Service, to serve her there. When this attempt failed, service was re-routed to a different address—presumably the one on file with the MCF as Homer's home address. How-

ever, consistent with the policy of the Marshals Service, the Return of Service form does not list this new address; it merely gives a certified mail number and states "Sent to last known address." Most crucially, the original certified postal receipt from October 30, 1999—the only document bearing the address to which the original 1999 summons was actually sent and the signature of the individual who received the mailing—was missing. Joseph testified that, pursuant to Marshals Service standard record-keeping protocols, postal receipts are routinely destroyed three years after they are received. The original postal receipt from the 1999 summons thus apparently had been destroyed pursuant to this policy.

On August 27, 2004, Homer replied to Jones-Bey's response. Homer also submitted a declaration from Joseph, and this one expressly recanted many of his earlier statements in the Jones-Bey declaration. Joseph now stated that he could not recall the address to which the summons and complaint were sent in 1999, and he did not know whether the MCF had given him the correct address when he sent them. He also stated that he did not remember whether the name signed on the postal receipt was "Homer." Further, he declared that he was now unsure whether the same address was used in mailing the 1999 summons and in mailing the 2003 order to appear (other than that the city was the same). Joseph also reiterated that the original postal return receipt from the October 1999 mailing had been destroyed consistent with standard record-keeping procedures. Joseph finally expressly withdrew any statement in his earlier declaration that conflicted with these later recitations.

Faced with this dearth of definitive information, the district court initially proposed that an evidentiary hearing be held to probe the details of the Marshals Service's attempts to serve Homer in 1999. This proposal was rejected, and the court proceeded to rule on the merits of Homer's Rule 60(b) motion. On November 12, 2004, the district court denied

Homer's Rule 60(b) motion to set aside the default judgment. The district court ruled that (1) the Marshals Service's return of service document showing that process had been served on "Lisa Hommer" on October 29, 1999, though it specified no particular address and identified no specific individual as having received the service, constituted a *prima facie* showing that Homer had been served with process, and (2) Homer had not rebutted this showing with "strong and convincing" evidence. (Nov. 12, 2004 Order). Homer now appeals.

## II. JURISDICTION

Our jurisdiction over the present appeal is not disputed. The district court had jurisdiction over Jones-Bey's Eighth Amendment claims pursuant to 28 U.S.C. §§ 1331 and 1334, and it entered a default judgment against "Lisa Hommer" in the amount of $40,000 on March 7, 2002. On June 7, 2004, Homer appeared and made her Rule 60(b) motion asking that the judgment be set aside as void for lack of personal jurisdiction. The district court denied that motion on November 12, 2004 and entered its final order to that effect on November 16, 2004. Homer timely filed the instant appeal on December 13, 2004. Accordingly, our jurisdiction now rests on 28 U.S.C. § 1291.

## III. DISCUSSION

Homer challenges the denial of her Rule 60(b) motion to set aside the earlier default judgment against her for lack of personal jurisdiction. Under Federal Rule of Civil Procedure 60(b)(4), a movant " 'may attack the judgment for lack of jurisdiction over the person at any time since a judgment rendered without jurisdiction over the person [is] void.' " *Robinson Engineering Co. Pension Plan and Trust v. George*, 223 F.3d 445, 453 (7th Cir. 2000) (quoting *Taft v.*

*Donellan Jerome, Inc.*, 407 F.2d 807, 808 (7th Cir. 1969)). In denying Homer's motion, the district court relied on the general principle that, under Federal Rule of Civil Procedure 4, "[a] signed return of service constitutes prima facie evidence of valid service 'which can be overcome only by strong and convincing evidence.' " *O'Brien v. R.J. O'Brien & Associates, Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) (quoting *Hicklin v. Edwards*, 226 F.2d 410, 414 (8th Cir. 1955)). *See also Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 808-09 (7th Cir. 1969) (same rule). Once such a prima facie showing is made, the burden shifts to the defendant to demonstrate that service was not received. *Jones v. Jones*, 217 F.2d 239, 242 (7th Cir. 1954).

The district court observed that a signed return of service was produced by the plaintiff in this case[1] and asserted that the defendant presented no "strong and convincing" evidence to rebut this prima facie showing of service—no evidence of a mistake or confusion regarding her address, of her having moved, or of delivery to a different individual at her correct address. (Nov. 12, 2004 Order, App. at 46.) In light of these determinations, the district court concluded

---

[1] In support of this disposition, the district court made the following factual findings:

> The Westville Prison gave [Paul Joseph] Ms. Homer's last known residential address, and Mr. Joseph sent the summons and complaint to that address by certified mail on October 29, 1999. On October 30, service arrived at Ms. Homer's last known address, and the return receipt was signed and returned to Mr. Joseph's office. Once he received the signed return receipt from Ms. Homer's last known address, Mr. Joseph had the "Process Receipt and Return" signed, dated and filed with the court on November 2, 1999 as a "Return of Service executed upon Lisa Hommer [sic] on 10/30/99."

(Nov. 12, 2004 Order, App. at 43-44.)

that Homer had not overcome Jones-Bey's prima facie showing of service, and it denied her Rule 60(b) motion to set aside the default judgment.

Homer challenges the district court's ruling on several grounds: she argues that (1) the record does not support the district court's factual findings,[2] (2) a return of service that does not indicate the address used or the individual who received the service is insufficient to make out a prima facie showing of service under *O'Brien* and related cases and (3) Jones-Bey cannot carry his burden of showing that the district court had personal jurisdiction over Homer in the first place.

We review the district court's entry of default judgment, as well as its denial of a motion to set aside such a judgment, for an abuse of discretion. *George*, 223 F.3d at 448. If the district court had no jurisdiction over the movant, its judgment is void and it is an abuse of discretion to deny the movant's request to set aside the judgment under Rule 60(b). *Id. See also United States v. Indoor Cultivation Equipment From High Tech Indoor Garden Supply*, 55 F.3d 1311, 1317 (7th Cir. 1995) ("If the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)."). We review *de novo* the sufficiency of service at

---

[2] With respect to the district court's factual findings, Homer argues that, since the return of service is silent as to the actual address used or as to the individual who received the service, there was no basis for finding that service was actually sent to Homer's "last known address" (as opposed to some other, erroneous address), or that the return receipt was signed. Homer points out that there is no evidence that the address given to Joseph was the one used to mail the summons, Paul Joseph denied knowing whether the receipt was signed, and Mr. Joseph did not know if the address given him was actually Homer's address.

the time of the original default judgment. *Claus v. Mize*, 317 F.3d 725, 727 (7th Cir. 2003).

As an initial matter, we note that it is questionable whether the presumption of service and the burden-shifting scheme referenced in *O'Brien, Hicklin* and *Taft* applies to returns of service that do not specify the address used or the identity of the individual who accepted the mailing. *Hicklin* and *Taft* are distinguishable from the instant case since the returns of service at issue in those cases specified an address and/or an individual recipient. It is not entirely clear whether *O'Brien* falls into this category as well since the court there never indicated that the return of service specified a particular address but merely stated that the plaintiff "present[ed] the court with proof of service indicating [movant] had been served on August 23, 1989." 998 F.2d at 1398. Other federal courts have similarly held that more fully elaborated returns of service may be adequate to demonstrate service of process,[3] and several have held vague returns or incomplete mail receipts to be inadequate.[4]

---

[3] *See, e.g., LSJ Inv. Co., Inc. v. O.L.D., Inc.*, 167 F.3d 320, 323 (6th Cir. 1999) (ruling that the district court did not err in determining service was proper where return receipt identified the individual who received service and an address the defendant had repeatedly given as a valid mailing address); *Home-Stake Production Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1016-17 (10th Cir. 1990) (holding that prima facie showing was made where return of service identified the specific address used and stated that service was given to an individual who "identified herself as the cook working for [defendant] for the past Twenty years").

[4] *See, e.g., Chester v. Green*, 120 F.3d 1091 (10th Cir. 1997) (certified mail receipts which are not stamped by the post office and which contain no acknowledgment showing actual delivery are insufficient to demonstrate service); *Gulley v. Mayo Foundation*, 886 F.2d 161 165-66 (8th Cir. 1989) (mail receipt is insufficient if
(continued...)

More fundamentally, application of the presumption of service in cases like the one before us would actually under-cut the burden-shifting scheme described in *O'Brien* since a blank return of service essentially cannot be rebutted. If an address or a receiving individual are specified on a return of service (as is normally the case), a movant may challenge service by demonstrating, for example, that the address was incorrect or the specified recipient did not deliver the summons to the movant. In such a situation the *O'Brien* presumption and burden-shifting scheme makes sense. The movant, after all, has the best access to informa-tion regarding her place of residence or living arrangement at the time of alleged delivery.

However, if no address or receiving individual is specified on the return of service, a movant has little or no basis on which to challenge the alleged service of process, and the *O'Brien* presumption becomes quite arbitrary. Where an unelaborated return of service is countered by a similarly unelaborated denial that service occurred, there would seem to be little rational basis for crediting one party over the other.[5] Indeed under the rule advocated by Jones-Bey, an incomplete return of service would actually help the beneficiary of a default judgment *more* than a complete one,

---

[4] (...continued)
signed by mail room employee rather than intended recipient because it provides no evidence of actual, timely notice); *See also Scheerger v. Wiencek*, 34 F. Supp. 805 (W.D.N.Y. 1940); *United States ex rel. Tar Products Co. v. Severin*, 6 F. Supp. 754, 755 (M.D. Pa. 1934); *Murphy v. Campbell Soup Co.*, 44 F.2d 214, 216 (D. Mass. 1930).

[5] This is especially so in this case given that there was evidence casting some doubt on Jones-Bey's attempts to serve Homer from the beginning, including the fact that Jones-Bey sent the sum-mons to the wrong address initially and listed the defendant's last name as "Hommer."

since a vague or blank return effectively cannot be rebutted. This would seem to be a perverse result, not least because generally it is the plaintiff who ordinarily bears the burden of demonstrating that the district court had personal jurisdiction over the parties, including valid service of process. *Claus*, 317 F.3d at 727 ("The plaintiff bears the burden of showing that personal jurisdiction over the defendant exists"). Normally, if the evidence submitted by the parties is inconclusive, as it appears to be in this case, the plaintiff's position is in jeopardy; yet application of the *O'Brien* presumption would produce the exact opposite result.

Happily, we need not definitively address this issue, and the district court need not have either. In fact the district court's analytical approach to this case may have been somewhat off the mark. Federal Rule of Civil Procedure 4(e) provides that federal courts will have personal jurisdiction over a defendant if (1) service is effected pursuant to the law of the state where the district court is located, (2) a summons is delivered to the defendant personally, (3) the summons is left at the defendant's usual abode with a person of suitable age and discretion, or (4) the summons is delivered to an authorized agent of the defendant. Fed. R. Civ. P. 4(e). In other words, all methods of service specifically described by the Federal Rules of Civil Procedure involve in-hand delivery. Here, however, the alleged service was executed by certified mail, a state-law method not specifically enumerated in Rule 4(e). Accordingly, the validity of service here turns not on the specifications of the Federal Rules themselves but on the relevant provisions of Indiana law. *Claus*, 317 F.3d at 727. The *O'Brien* presumption addresses evidentiary approaches for proving the fact of service in federal court; it does not address antecedent questions of whether the chosen method of service conformed to the law.

Unfortunately, the Order of the district court does not purport to address Indiana law, and based on the (sparse) evidentiary record there remains a genuine question whether the attempted service of process was valid as a matter of state law. The relevant Indiana procedural rule, which applies via Fed. R. Civ. P. 4(e)(1), provides only that valid service may be made on an individual by "sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter." Ind. St. Trial P. R. 4.1(A)(1). Indiana Trial Rule 4.11 sets forth additional requirements for service by certified mail. The rule states, in pertinent part:

> In his return the clerk of the court or the governmental agent shall show the date and place of mailing, a copy of the return receipt if and when received by him showing whether the mailing was accepted or returned, and, if accepted, by whom. The return along with the receipt shall be promptly filed by the clerk with the pleadings and become a part of the record.

Ind. St. Trial P. R. 4.11.[6]

---

[6] Homer also cites a passage from *Jones-Bey v. Wright*, 876 F. Supp. 195 (N.D. Ind. 1995), in which the District Court Northern District of Indiana ruled that the Marshals Service, in making a return of service, must "hold the address [of the defendant] in confidence." *Id.* at 198. Homer argues that this passage indicates that U.S. Marshals are to retain records of a defendant's address so as to "permit the district court to determine where service occurred in the event of a question about it." This contention is problematic for two reasons. First, the district courts do not create binding authority for this Court, and second, the context of the statement suggests that the district court was more

(continued...)

The problem in this case, of course, is that the Marshals Service's return does not specify where exactly the summons was sent, nor does it include "a copy of the return receipt . . . showing whether the mailing was accepted or returned, and, if accepted, *by whom*." *Id.* (emphasis added). The original postal receipt, which presumably *did* specify exactly where the summons was sent and who accepted it, has been destroyed, ostensibly in accordance with the Marshals Service's internal record-keeping protocols. Thus, for aught that appears, a proper mail receipt containing the required information was never filed with the pleadings (as required by Rule 4.11) in the initial action against Homer in 1999, or in Jones-Bey's motion for entry of default judgment in June 2001; and contrary to the plain language of Indiana Trial Rule 4.11, a proper receipt certainly has not become a part of the record. Unfortunately, the district court docket sheds no more light on the issue. It merely recites a date of service and notes that "Lisa Hommer" was served. Similarly, the return of service filed with the court states only that service on "Lisa Hommer" was "[s]ent to last known address."

Such evidentiary deficiencies pose more than a theoretical problem. It is a long-accepted proposition of Indiana law that the very concept of "service," across various statutory contexts, includes the ability to provide *proof* of that service in court. *See Hendricks County Bank and Trust Co. v. Guthrie Bldg. Materials, Inc.*, 663 N.E.2d 1180, 1185 (Ind. Ct. App. 1996) (citing *Lock Joint Tube Co. v. Citizens Trust and Sav. Bank of South Bend*, 31 N.E.2d 989, 993 (Ind. 1941) (citing *Chi., Lake Shore & S. Bend Ry. Co. v. Sanders*,

---

[6] (...continued)
concerned about confidentiality than retention of addresses. The full sentence reads: "The marshal shall hold the address in confidence, and is not to divulge it to any person except by order of this court." *Id.*

114 N.E. 986, 987 (Ind. Ct. App. 1917))); *see also Leons v. Bloemker*, 649 N.E.2d 1041, 1043 (Ind. Ct. App. 1995); *Bayes v. Isenberg*, 429 N.E.2d 654, 659 (Ind. Ct. App. 1981).[7] In *Hendricks*, for example, service by fax was rejected largely because claimants using fax service cannot demonstrate that notice was in fact delivered to someone authorized to accept it. 663 N.E.2d at 1185. The court explained:

> "[S]ervice of notice" has a definite meaning, and unless otherwise provided by law means "personal service of the individual *in such a way that the party who makes service may be in a position to make due proof thereof to the court*." . . . It is inherent in the concept of "service" that service of notice upon a person or entity imposes legal obligations and consequences that make the manner and proof of such notice of utmost importance. . . . [T]he term "serves" means legally sufficient service of notice upon which a due return of service can be made.

*Id.* (quoting *Lock Joint Tube*, 31 N.E.2d at 993) (emphasis added). In keeping with these proof requirements, Indiana law places the risk of errant mail service on the plaintiff, who chooses that method of service and is in the best position to establish whether it was proper. *Roberts v. Watson*, 359 N.E.2d 615, 619-20 (Ind. Ct. App. 1977).

In light of the legal consequences that service of process carries, these proof requirements and burden allocations make good sense. And in the present case, the existing record does not appear to allow Jones-Bey to make the re-

---

[7] Though some of these cases involve state-law claims which implicate their own specific service requirements, they discuss the concept of service in general terms, citing to *Black's Law Dictionary* and discussing the universal legal implications of service and notice. We see no reason why these discussions of "service" should not apply in the context of the Indiana Trial Rules as well.

quired showing. Like the fax service rejected in *Hendricks*, the mail service at issue here facially lacks adequate proof or a sufficient return. Given the importance Indiana law attaches not only to the existence but to the *contents* of the return of service, and given the underlying purpose of providing proof that service was properly made, it appears that the attempted service of Homer was at least technically noncompliant with Indiana Trial Rules 4.1 and 4.11, as well as with long-standing Indiana precedent.

Yet these technical shortcomings do not necessarily resolve the issue. Indiana Trial Rule 4.15(f) provides a savings clause to cure harmless defects in service. It provides that "[n]o summons or the service thereof shall be set aside or adjudged insufficient when either is reasonably calculated to inform the person to be served." Ind. St. Trial P. R. 4.15(f). Likewise, because Indiana Trial Rule 4.1 states that service "*may* be made" in the ways that rule sets forth, Ind. St. Trial P. R. 4.1 (emphasis added), the options specified in Rule 4.1 have been held to be only "general guidelines for service of process." *Swaim v. Moltan Co.*, 73 F.3d 711, 720 (7th Cir. 1996); *accord Tabbert, Hahn, Earnest, Webble, P.C. v. Lanza*, 94 F. Supp. 2d 1010, 1012-13 (S.D. Ind. 2000) (citing *Swain* and upholding service where properly mailed summons improperly omitted complaints which were sent and received several days later). In some cases, Indiana courts have gone so far as to suggest that Indiana Trial Rule 4.15(f), taken together with the seemingly discretionary language of Indiana Trial Rule 4.1 ("service *may* be made . . ."), means that "personal jurisdiction is acquired by *any* method of service . . . which comports with due process." *Washington v. Allison*, 593 N.E.2d 1273, 1275 (Ind. Ct. App. 1992) (emphasis added); *accord* Ind. St. Trial P. R. 4.15(f); *Swaim*, 73 F.3d at 720-21; *Glennar Mercury-Lincoln, Inc. v. Riley*, 338 N.E.2d 670, 675 (Ind. Ct. App. 1975). *But see* Ind. St. Trial P. R. 4.11 (stating that "the governmental agent *shall* show" certain information in a return

which "*shall . . .* become a part of the record.") (emphasis added). This Court has even stated that "[s]ervice of process that is reasonably calculated to inform, consistent with the letter of Trial Rule 4.15(F), is sufficient even if it fails to actually inform the party to which it is directed." *Swaim*, 73 F.3d at 721; *accord Glennar*, 338 N.E.2d at 675 (same rule).

However, such sweeping language may disguise a narrower application. This broad language generally appears in cases where a movant's actual notice of the lawsuit is not at issue, or where the movant "willfully avoided the proper attempts at service." *Swaim*, 73 F.3d at 721. Indiana courts have explained the purpose of Rule 4.15(f) as preventing defendants from ignoring reasonably calculated service based on harmless technical defects (something which would be impossible for a defendant without actual notice). *See*, *e.g.*, *Glennar*, 338 N.E.2d at 676. Thus, while technical shortcomings in service may be excusable (especially where the party to be served has actual notice of the lawsuit), a complete failure of service is not. "[T]he saving effect of T.R. 4.15(F) is inapplicable if 'there has been absolutely no service upon [the movant]' " since rule 4.15(f) " 'presupposes that there has been at least some kind of service upon the party.' " *Idlewine v. Madison County Bank and Trust Co.*, 439 N.E.2d 1198, 1201, (Ind. Ct. App. 1982) (quoting *Southern Indiana Ry. Co. v. Indianapolis & L. Ry. Co.*, 81 N.E. 65, 66 (Ind. 1907)). *See also LaPalme v. Romero*, 621 N.E.2d 1102, 1106 (Ind. 1993) ("Indiana case law holds that T.R. 4.15(F) only cures technical defects in the service of process, not the total failure to serve process."); *Robinson v. Turner*, 886 F. Supp. 1451, 1458 (S.D. Ind. 1995) (holding that service made to the wrong location was nonexistent service which could not be cured by Indiana Trial Rule 4.15(f)); *Roberts*, 359 N.E.2d at 620 (same).

The question then becomes whether any deficiencies in the attempted service of Lisa Homer were merely technical (and thus curable under Rule 4.15(f)), or whether a complete failure of service has occurred. To answer this question

a court normally must review "the entire record of attempted service," *Swaim*, 73 F.3d at 721, but here the existing record is so sparse that it is simply impossible to assess. This leaves us with two possible dispositions: We can either rule that Jones-Bey has not carried his burden of proving that Homer has been properly served (and grant Homer's motion outright), or we can vacate the district court's denial of Homer's Rule 60(b) motion and remand the case for further inquiry as to the factual circumstances and legal validity (under Indiana law) of the alleged service. Since the precise circumstances of the attempt to serve Homer remain so murky, and since it is not clear whether the failure to properly serve Homer was total or merely technical (and thus curable under Trial Rule 4.15(f)), a remand for further inquiry seems the best solution. This Court has recently held that remand for additional evidentiary hearings is warranted where the factual circumstances of disputed service are unclear. *George*, 223 F.3d at 453 (remanding for an evidentiary hearing where it was not clear from the record who received the summons from the process server in the movant's apartment building).

Several factors will be relevant to the district court's inquiry on remand. First, evidence of who in fact received Homer's summons would be highly relevant to—and perhaps dispositive of—the district court's inquiry, *see, e.g.*, *Roberts*, 359 N.E.2d at 620, as would evidence of the exact address used in the mailing.[8] Similarly, because Homer was successfully served with process for the garnishment hearing leading to this appeal, evidence that Homer's address had not changed between the two service attempts, or that the same address was used for both attempts, would suggest that the first service was similarly successful.

---

[8] *But cf. Mills v. Coil*, 647 N.E.2d 679 (Ind. Ct. App. 1995) (holding that the fact that service was made to a two-year-old last known address was not by itself sufficient to establish that service was reasonably calculated to inform a defendant).

Finally, though it is not a dispositive factor, the presence or absence of actual notice would be highly probative of valid service, including whether the challenged service was reasonably calculated to inform Homer.

Of course, the burden of demonstrating the court's personal jurisdiction over Homer remains squarely on Jones-Bey. *Claus*, 317 F.3d at 727. If, on remand, the district court cannot shed even one more ray of light on the circumstances surrounding the attempted 1999 service, it should grant Homer's motion to set aside the default judgment and allow Jones-Bey to attempt to re-serve Homer and bring his claims against her anew. *Cf. George*, 223 F.3d at 453 (making the same disposition). Homer obviously has actual notice of the action by now, but, as has been discussed, actual notice does not by itself constitute valid service of process. *Id. See also Swaim*, 73 F.3d at 719; *Mid-Continent Wood Products, Inc. v. Harris*, 936 F.2d 297, 301 (7th Cir. 1991).[9]

### IV. CONCLUSION

For the foregoing reasons, we VACATE the district court's order and REMAND the case for an evidentiary hearing

---

[9] As a practical matter, since all claims against Homer's co-defendants were summarily dismissed, further proceedings against Homer might appear to be a doomed enterprise. Indeed in affirming the district court's dismissal of these claims, this Court wondered aloud at the district court's entry of default judgment against Homer: "[G]iven the court's entry of a Rule 50(a) judgment [as to both co-defendants], we wonder (that's all we can do based on an incomplete record) whether *any* award of damages was appropriate." *Jones-Bey v. Rieger*, 2003 WL 21956972, at *2 (unpublished order) (emphasis in original).

**concerning the validity of the attempted service under the relevant provisions of Indiana law.**

**A true Copy:**

**Teste:**

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*