In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3625

RELATIONAL, LLC,

*Plaintiff-Appellee,*

*v.*

ROBERT A. HODGES,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:07-cv-00415—**David H. Coar**, *Judge.*

ARGUED APRIL 7, 2010—DECIDED DECEMBER 8, 2010

Before WOOD, EVANS, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge.* In 2005 Robert A. Hodges personally guaranteed $750,000 of debt that his company Laminate Kingdom, LLC ("Laminate") owed to Relational, LLC ("Relational"). When Laminate went bankrupt in 2007, Relational sued Hodges on the guaranty, but by then Hodges had sold his Florida home and returned to his native United Kingdom without leaving any forwarding information. Relational hired a private investigator to track him down. The private investigator located an

address for Hodges in the U.K. and effectuated personal service. To prove this, Relational submitted a return of service and two affidavits signed by a British process server who attested that she indeed served a man who identified himself as Robert Hodges. The district court accepted this showing and, when Hodges failed to appear, entered a default judgment in favor of Relational. Relational then filed an action to enforce the judgment in a U.K. court. The day before the hearing in that action was scheduled to commence, Hodges emerged from his shell and filed a motion in the district court to vacate the default judgment. He argued that he had not been served and that Relational's evidence was insufficient to prove otherwise. The district court denied the motion. We affirm.

## I. Background

Robert Hodges and his brother Richard were the proprietors of a 62-store hardwood-flooring business called Laminate Kingdom, LLC, based in Miami, Florida.[1] Relational, LLC, is based in Rolling Meadows, Illinois, and is in the business of equipment financing. On September 21, 2005, the Hodgeses entered into a contract with Relational whereby they personally guaranteed up to $750,000 of Laminate's financial obligations. The personal guaranty also specified that in the event of any legal proceeding, service of process may be made upon Robert

---

[1]  Richard Hodges was never served.

Hodges "by registered or certified mail . . . at his primary residential address . . . at 280 Arvida Parkway, Miami, FL 33156."

In January 2007, Laminate entered bankruptcy in the Southern District of Florida at the behest of its creditors. Within a week Relational filed this suit in United States District Court for the Northern District of Illinois to enforce the personal guaranty. As specified in the guaranty, Relational mailed the complaint, summons, and attachments to Robert Hodges's Florida address, but the mail carriers found the residence vacant. Through its contacts with Florida bankruptcy counsel, Relational later learned that Hodges had sold his home in Florida and returned to the U.K. without providing Laminate's trustee or creditors—including Relational—a forwarding address or any contact information.[2]

Relational then hired Mark Nicholls and his British investigation firm, Nicholls Investigation Services, to locate Hodges in the U.K. Using a database of corporate information maintained by the British government—known as the Companies House—Nicholls discovered that Hodges listed 20 Margaret Grove, Harborne, Birmingham, B17 9JH, as his U.K. residential address. On May 10, 2007, Nicholls's process server Karen Johns delivered the complaint, summons, and other documents to 20 Margaret Grove. Five days later, Johns signed a

---

[2] Throughout early 2007, the Hodgeses could not be located by either the Florida court or their own bankruptcy counsel. For this reason the Hodgeses' counsel eventually withdrew.

return of service and a certified affidavit stating under oath that on May 10, 2007, at 4 p.m. she served a man at 20 Margaret Grove who identified himself as Robert Hodges.

Several weeks later, Relational's U.K. counsel began to receive letters from two English solicitors writing on behalf of Hodges's grandmother and aunt. The solicitors claimed that 20 Margaret Grove was the residence of Hodges's grandmother and that the court documents were either left on her doorstep or served upon an unknown individual. They also said the family had no knowledge of Robert Hodges's whereabouts, had not seen him for over two years, and was unable to forward the documents to him. When Hodges failed to appear in court, Relational orally recounted to the district judge the details of this correspondence with the English solicitors. Relational then moved for a default judgment and sent a copy of the motion by mail to Hodges's business address, and by mail and courier to 20 Margaret Grove. Hodges again offered no response, and on August 17, 2007, the district court entered a default judgment against him in the amount of $750,000.

On November 6, 2007, Relational filed a statutory demand in the U.K. seeking to enforce the default judgment. Once again, Relational had difficulty with service; Hodges persistently refused to accept personal service. After much effort, Relational finally accomplished service through Hodges's solicitor. Hodges then delayed the U.K. proceeding for nearly a year by seeking a number of extensions; the U.K. court eventually set October 31,

2008, as the hearing date on Relational's enforcement action. On the day before that hearing was to commence, Hodges filed a motion in the Northern District of Illinois seeking to vacate the default judgment under Federal Rule of Civil Procedure 60(b)(4). He claimed he was never properly served and the judgment was therefore void.

On February 2, 2009, the district court held an evidentiary hearing on Hodges's motion. Prior to the hearing, Relational moved to allow Johns, the U.K. process server, to testify telephonically. Hodges objected and the court sustained the objection, thinking it would be better for Johns to testify in person. But Johns was unable to make the trip to the United States, so in lieu of live testimony, Relational secured an additional affidavit from her. This second affidavit was substantially similar to the first, except in two respects. The supplemental affidavit included a physical description of Mr. Hodges that had not been included in the original affidavit. But the second affidavit was not certified by an administrator of oaths.

Hodges offered his version of events at the evidentiary hearing. He claimed he was never served and did not live in his grandmother's home at 20 Margaret Grove. Rather, he testified that he lived 16 miles away and had not visited his grandmother for nearly two years. Hodges explained that on May 20, 2007—the day Relational said he was served—he was at a local pub called the Punch Bowl, and he produced a credit-card statement showing he had spent £71 there on the day in ques-

tion. To buttress his testimony, Hodges presented the letters from the English solicitors that had been sent to Relational's U.K. counsel indicating that Hodges did not live at 20 Margaret Grove. He also submitted an affidavit from his grandmother attesting that she found a large envelope of documents at her doorstep on May 10, 2007.

On cross-examination Hodges admitted that he relocated to the U.K. without leaving his creditors a forwarding address. He further acknowledged that he had signed the document on file with the Companies House listing 20 Margaret Grove as his residence, although he claimed that when he signed it, the document was blank and someone else filled in the section asking for his residential information.

At the conclusion of the hearing, Relational submitted the supplemental affidavit signed by Johns. Hodges moved to strike the affidavit as an insufficient substitute for Johns's live testimony, but the court denied the motion. The court denied the motion to vacate, and Hodges moved for reconsideration claiming the affidavit was legally defective. The court summarily denied the motion, and Hodges appealed.

## II. Discussion

We review the district court's entry of default judgment, as well as its denial of the Rule 60(b)(4) motion, for abuse of discretion. *Homer v. Jones-Bey*, 415 F.3d 748, 753 (7th Cir. 2005). However, if the district court lacked personal jurisdiction over the defendant at the time it entered the default judgment, the judgment is void, and

it is a per se abuse of discretion to deny a motion to vacate that judgment. *Id.; Robinson Eng'g Co. Pension Plan & Trust v. George*, 223 F.3d 445, 448 (7th Cir. 2000). Stated differently, a judgment is void as to any party who was not adequately served. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987); *Homer*, 415 F.3d at 752; *Robinson*, 223 F.3d at 448.

In this appeal, Hodges does not argue that the *method* of service employed by Johns—that is, personal service—was legally insufficient. In other words, he does not argue that Federal Rule of Civil Procedure 4(f)—outlining the allowable methods for serving individuals in foreign nations—proscribes personal service as a means for serving individuals located within the United Kingdom.[3] *See* FED. R. CIV. P. 4(f). Hodges instead argues that he was not served at all. Thus, we assume personal service is a legally acceptable mode of service in these circumstances[4] and focus our attention on the factual question of whether Relational proved that Hodges was served.

---

[3] Under Rule 4(f)(1) service may be effectuated by an "internationally agreed means of service that is reasonably calculated to give notice." In the absence of an internationally agreed means, or if an internationally agreed means allows but does not specify other means, personal service may be used, but only if permitted under the foreign country's law. *See* FED. R. CIV. P. 4(f)(2).

[4] We can sidestep this legal question here because defenses based on a lack of personal jurisdiction, such as legally defective service, may be waived. *See O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1399 (7th Cir. 1993).

"A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) (quotation marks omitted). Although Relational submitted a return of service and two affidavits to prove service, Hodges nonetheless contends that Relational failed to satisfy its prima facie burden because the *supplemental* affidavit was, among other things, unsworn and uncertified by an administrator of oaths.[5] Accordingly, Hodges claims that the district court was not entitled to rely on the supplemental affidavit in making its ruling. Relational asserts in response that Hodges waived any argument attacking the sufficiency of the supplemental affidavit because he first raised the argument in his motion for reconsideration, not when he initially moved to strike the affidavit.

The parties spill a lot of ink addressing each other's contentions, but the dispute about the supplemental affidavit is immaterial to the resolution of this appeal. Even if the second affidavit was legally defective

---

[5] Specifically, Hodges argues that the supplemental affidavit should have been excluded for three reasons: (1) it was an unsworn, uncertified affidavit that did not comply with the rules set forth in 28 U.S.C. § 1746 for unsworn declarations; (2) it was hearsay under Federal Rules of Evidence 801 and 802; and (3) that by submitting the affidavit, Relational circumvented the district court's order requiring Johns to testify at the hearing.

(because it was unsworn and uncertified), the return of service and original affidavit Relational offered were sufficient to discharge its prima facie burden. To make a prima facie showing, the movant must simply produce a return of service identifying the recipient and noting when and where service occurred, thereby providing enough detail so the opposing party knows what evidence he must rebut. *See Homer*, 415 F.3d at 754 (suggesting a bare-bones return of service lacking an address or a receiving individual might be insufficient to discharge the prima facie burden); *cf. Robinson*, 223 F.3d at 451-53 (holding that it was improper for the court to grant a default judgment where the process server stated in his affidavit that he served an unidentified individual). Relational's original return of service and accompanying affidavit from Johns satisfied these basic requirements; they attested that Johns served an individual at 20 Margaret Grove on May 10, 2007, at 4 p.m. who identified himself as Robert Hodges. The supplemental affidavit simply added a physical description of Hodges, and while this detail may have been helpful, it was not required. *See O'Brien*, 998 F.2d at 1398. Hodges makes no argument that Johns's original affidavit suffered from the same legal defects that afflict the supplemental affidavit.

Once Relational made this prima facie showing, the burden shifted to Hodges to rebut, by strong and convincing evidence, the presumption of service. *Id.* The district court held that Hodges failed to clear this hurdle because his testimony was unconvincing. For example,

Hodges claimed that on the date and time that Johns said she served him—4 p.m. on May 10, 2007—he was actually at the Punch Bowl. To corroborate his testimony, Hodges offered a credit-card statement showing a £71 Punch Bowl charge on that date. But the district court noted that the credit-card statement did not specify the time of that charge and thereby failed to eliminate the possibility that Hodges was served at 4 p.m. on May 10. The district court also observed that Hodges's behavior suggested that he was trying to avoid his obligations to his creditors. When Laminate went bankrupt, Hodges abandoned the bankruptcy proceedings in Florida, failed to provide contact information to his creditors or even his own counsel, and moved overseas. Moreover, after Relational secured the default judgment and filed a statutory demand in the U.K., Hodges attempted to avoid that proceeding by dodging service and seeking several delays of the hearing. The district court also rejected Hodges's claim that he was unaware of the present suit, especially since he had listed 20 Margaret Grove in the Companies House as his "usual residential address" and had family members residing there.

These credibility determinations of the district court—to which we defer—conclusively resolve the case against Hodges, but he offers a series of last-ditch arguments to avoid this result. He contends that the district court's rejection of Johns's request to testify telephonically amounted to an order that she appear in person; her failure to appear, he argues, means that Relational

violated the court's order. He argues as well that this deprived him of the opportunity to cross-examine Johns. Finally, he claims that the court should have credited his testimony because he was the only principal witness to testify in person.[6]

These claims suffer from a number of misapprehensions about the applicable law. First, Hodges appears to presuppose that the district court could compel Johns to appear. This is simply not the case; foreign nationals are beyond the court's subpoena power. *See* 28 U.S.C. § 1783; *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993). Thus, the court could not "order" Johns to do anything. Second, the absence of cross-examination does not render Johns's affidavit unworthy of credence. Hodges does not—and cannot—maintain that he has a right of confrontation in the circumstances of this case. *Van Harken v. City of Chicago*, 103 F.3d 1346, 1352 (7th Cir. 1997) (no absolute right of confrontation in civil cases, but confrontation is sometimes required to ensure due process). It is true that Hodges was the only principal witness to testify in person, but that does not mean the district judge was required to give his testimony more weight. Credibility is earned, and

---

[6] Nicholls also testified at the hearing, but he could provide little detail about the May 10 events because he was not present when Hodges was served. The import of Nicholls's testimony was to provide some evidence of Johns's character and reputation for honesty. Specifically, he testified that he had often worked with Johns and deemed her an honest person.

here, Hodges simply failed to persuade the court that he was telling the truth.[7]

Accordingly, the district court was well within its discretion to deny Hodges's Rule 60(b)(4) motion to vacate the default judgment. The district court's judgment is therefore AFFIRMED.

---

[7] It is also worth reiterating that Johns was willing to testify telephonically, but Hodges objected to this proposal and urged the district court to disallow any telephonic testimony.