In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3353

TRADE WELL INTERNATIONAL,

*Plaintiff-Appellant,*

*v.*

UNITED CENTRAL BANK,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:12-CV-00701 — **James D. Peterson**, *Judge.*

ARGUED MAY 27, 2016 — DECIDED JUNE 17, 2016

Before POSNER and FLAUM, *Circuit Judges*, and ALONSO,
*District Judge.*[*]

FLAUM, *Circuit Judge*. This appeal arises out of a 2012 re-
plevin action brought by Trade Well International, a Pakistani
company that leases furnishings to hotels, against United
Central Bank (the "Bank" or "UCB") in federal court. In 2010,

[*] The Honorable Jorge L. Alonso, United States District Court for the
Northern District of Illinois, sitting by designation.

UCB foreclosed on a hotel that had leased items from Trade Well. After Trade Well's attorney, Maurice Salem, attempted to file a lien on property owned by the Bank, the district court held Salem in contempt and revoked his pro hac vice status. The Bank then filed a counterclaim against Trade Well alleging slander of title. Because Trade Well failed to retain a different attorney, the district court entered default judgments in favor of the Bank in the replevin action and counterclaim.

In February 2015, we reversed the district court's contempt order against Salem and reinstated his pro hac vice status. With Salem appearing once again on its behalf, Trade Well moved to set aside the default judgments. The district court denied Trade Well's motion. We affirm.

## I. Background

This is the second appeal arising out of Trade Well's 2012 replevin action against UCB. *See Trade Well Int'l v. United Cent. Bank*, 778 F.3d 620 (7th Cir. 2015) ("*Trade Well I*"). After UCB foreclosed on the hotel housing Trade Well's leased furnishings and started searching for buyers, Trade Well demanded the return of its property. The Bank refused and Trade Well sued the Bank for replevin in the Western District of Wisconsin. Trade Well later amended its complaint to add claims of negligence and conversion.

While the replevin action was pending, Trade Well's attorney, Salem, filed a "Notice of Lien" on the hotel with the Sauk County Register of Deeds in March 2014. The Bank asked Salem to withdraw the notice, but he refused. The Bank then asked the district court to strike the notice, revoke Salem's pro hac vice admission, and assess costs and attorney's fees against Trade Well and Salem. On April 4, 2014, the district

court held Salem in contempt of court and revoked his pro hac vice admission as a sanction for filing the lien. The court also referred him for disciplinary action by the States of Wisconsin and New York, and imposed a $500 fine.

Additionally, the district court granted the Bank leave to file a counterclaim seeking a temporary restraining order, injunction, or damages related to the filing of the lien. In June 2014, the Bank filed a counterclaim against Trade Well alleging slander of title and seeking damages, costs, attorney's fees, as well as a declaratory judgment that the notice Salem had filed was void.

The dispute between Trade Well and the Bank was still pending before the district court when Salem filed a pro se appeal of the contempt and sanctions order with this Court. On February 10, 2015, in *Trade Well I*, we vacated the district court's contempt order and imposition of sanctions. 778 F.3d at 628.

Because he had been deprived of his pro hac vice status during the pendency of the *Trade Well I* appeal, Salem was unable to represent Trade Well in the replevin action before the district court. Trade Well did not secure alternative representation and, due to its corporate status, was unable to appear in court without counsel. Consequently, nearly seven months after Salem was removed as counsel, the district court entered default and dismissed with prejudice Trade Well's claims against the Bank for failure to prosecute. The court also entered a default judgment against Trade Well on the Bank's counterclaim.

In March 2015, after this Court reinstated Salem's pro hac vice status, Trade Well—with Salem back as its representative—filed a motion to vacate the default judgments in the original suit and the counterclaim.[1] In September 2015, the district court held an evidentiary hearing on the motion to vacate. Salem testified that following revocation of his pro hac vice status, he had tried to obtain substitute counsel for Trade Well. He claimed to have spoken with four law firms and approximately ten attorneys about taking the case between April and June of 2014. He also testified that he had contacted between 50 and 100 attorneys following the district court's entry of default judgment in October 2014. However, Salem's court filings consistently stated that he had contacted four firms and "over ten attorneys."

Salem further testified that his primary method of finding counsel was to search the internet for attorneys in Madison. He also claimed that he had called the district court's clerk's office for a list of attorneys. Salem said that he had even contacted the Pakistani embassy in an effort to recruit counsel.

Salem testified that despite these efforts, he was unable to recruit substitute counsel. Salem expressed his belief that Madison attorneys were afraid to take the case because they did not want to jeopardize their relationship with the district court. According to Salem, one of the attorneys he spoke with described the case as a "hot potato." Salem said that two of his friends in Illinois declined the case because they were afraid of unfair prejudice by the district court.

---

[1] Following our decision in *Trade Well I*, the original district court judge recused himself in the case on March 16, 2015.

Trade Well also presented testimony from Umar Paracha, the brother of one of Trade Well's owners. Paracha testified that he had attempted to recruit counsel for Trade Well. While Paracha admitted that he had not contacted any attorneys who had represented him in previous matters, he said that he had approached between ten and fifteen lawyers about representing Trade Well. He testified that he primarily used the internet to find attorneys. Like Salem, Paracha was unable to secure counsel for Trade Well. He suggested that attorneys were afraid to take the case because they did not believe that they could win.

In addition to this testimony, Trade Well offered four exhibits. Two of the four exhibits listed names and phone numbers for four attorneys that Paracha claimed to have contacted. Salem also submitted notes containing a list of nine attorneys with phone numbers as well as information for his two friends in Illinois. Moreover, Trade Well submitted an affidavit from Muhammad Tahir, who is one of Trade Well's owners and Paracha's brother. The affidavit states that the company instructed Salem and Paracha to offer money to any attorney willing to take the case. Yet, Salem and Paracha testified that they never mentioned Trade Well's willingness to pay to any of the attorneys they contacted because the discussions never reached the matter of compensation.

The district court expressed skepticism about Trade Well's efforts to find counsel. In particular, the court found incredible Salem's claim that he contacted 50 to 100 attorneys. The court determined that Salem had contacted approximately fourteen attorneys, mostly between April and June 2014. The

court also noted that many of the attorneys Salem had contacted practiced criminal law and thus, Salem had not made a substantial effort to find commercial litigators.

Similarly, the district court found that Paracha's testimony was exaggerated. The court determined that he had contacted approximately four attorneys starting in October 2014. The court further found incredible the assertion that Salem and Paracha never discussed compensation with any of the attorneys.

Based on these findings, the district court denied Trade Well's motion to set aside the default judgments. It found that Trade Well had not demonstrated good cause for and quick action to correct the defaults. The district court also rejected Trade Well's efforts to argue that the judgments were invalid. Trade Well appeals, arguing that the default judgments are void for lack of personal jurisdiction, that it demonstrated good cause for and quick action to correct the defaults, and that precedent requires us to vacate the defaults.

## II. Discussion

### A. Validity of the Default Judgments

Trade Well first argues that the district court lacked personal jurisdiction over it, rendering the default judgments invalid. Under Federal Rule of Civil Procedure 60(b), a final judgment must be set aside if the court lacked personal jurisdiction. *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 400 (7th Cir. 1986). A judgment is also void as to any party who was not adequately served. *Relational, LLC v. Hodges*, 627 F.3d 668, 671 (7th Cir. 2010). In addition, a judgment is void if it was rendered "in a manner inconsistent with due process of law." *United States v. Indoor Cultivation Equip. from High Tech Indoor*

*Garden Supply*, 55 F.3d 1311, 1316 (7th Cir. 1995) (citation and internal quotation marks omitted). Although the standard of review for appeals under Rule 60(b) is abuse of discretion, it is a per se abuse of discretion for a district court to refuse to vacate an invalid judgment. *Id.* at 1317.

We cannot accept Trade Well's contention that the district court lacked personal jurisdiction over it because Trade Well is a foreign corporation that did not have counsel at the time of the default judgments. By filing the original replevin action, Trade Well submitted itself to jurisdiction in Wisconsin for purposes of the replevin action and the counterclaim. In general, when a defendant interposes a permissive counterclaim, the plaintiff cannot object that the court lacks personal jurisdiction for purposes of adjudicating the claim. *See Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 451 (1932) (holding, in a patent case, that "[w]hen the [plaintiff] brought the suit in [federal district court], it submitted itself to the jurisdiction of the court with respect to all the issues embraced in the suit, including those pertaining to the counterclaim of the defendants"); 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1424 (3d ed. 2016).

Moreover, a district court may exercise personal jurisdiction over any party that purposefully avails itself of the forum. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). By filing suit in Wisconsin, Trade Well availed itself of the forum, whether by explicitly consenting to jurisdiction, waiving any challenge to jurisdiction, or simply receiving the privileges and benefits of the forum state. *See id.* at 880–81. Indeed, the purposeful availment inquiry is ultimately about whether the party should reasonably anticipate being haled into court in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

474 (1985). When a plaintiff files a claim in a particular state, he should reasonably expect to answer a counterclaim in that forum.

Relatedly, Trade Well argues that it was fundamentally unfair and a violation of due process for the district court to impose a default judgment after its counsel was removed. We disagree. Trade Well received notice of the proceedings and an opportunity to be heard. *See Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 423 (7th Cir. 1998) (outlining the requirements for due process). The Bank claims that following Salem's removal, it served Trade Well directly with all relevant motions at its last known address; Trade Well does not dispute that it had notice of the proceedings, including both motions for default judgment. Trade Well does argue that without Salem, it had no means of representing itself because corporations cannot proceed pro se. *United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008) ("A corporation is not permitted to litigate in a federal court unless it is represented by a lawyer licensed to practice in that court."). Nonetheless, Trade Well had ample time—nearly seven months—to secure replacement counsel to prosecute the original action, and roughly five months to respond to the counterclaim. Trade Well also could have requested a stay pending Salem's appeal, but did not do so. Given the circumstances, we agree with the district court that the default judgments did not violate due process.

Trade Well also suggests that the judgments are invalid due to inadequate service of process. This argument is unavailing because the Bank adequately served Trade Well under Rules 4 and 5. As mentioned above, Trade Well does not dispute the Bank's assertion that, following Salem's removal, it

served all filings on Trade Well at its last known address. Service of process therefore was proper under Rule 4, which provides that a foreign corporation may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1), (h)(2); *see also Research Sys. Corp. v. IPSOS Publicite*, 276 F.3d 914, 926 (7th Cir. 2002) ("[S]imple certified mail [is] a method permitted by Article 10(a) of the Hague Convention, so long as the foreign country does not object." (internal citation omitted)). Similarly, service of process was valid under Rule 5 because all documents were mailed to Trade Well's last known address. *See* Fed. R. Civ. P. 5(b)(2)(C) (allowing service to a person's last known address and specifying that service is complete upon mailing).

In sum, the default judgments are valid and the district court did not abuse its discretion by refusing to set them aside.

### B. Denial of the Motion to Vacate

Trade Well next argues that, even if the default judgments are valid, the district court abused its discretion by denying its motion to vacate. Trade Well's primary contention is that the district court improperly discredited Salem's and Paracha's testimony without any evidence to contradict their allegations. Because Trade Well believes its efforts to find representation were "extraordinary and undisputed," it claims that the district court should have granted the motion to vacate.

Courts grant relief under Rule 60(b) only in exceptional circumstances. *Wehrs v. Wells*, 688 F.3d 886, 890 (7th Cir. 2012). We review a motion to vacate a default judgment for abuse of

discretion. *Shakman v. City of Chicago*, 426 F.3d 925, 932 (7th Cir. 2005). A district court abuses its discretion when its factual findings are clearly erroneous. *Id.* We give special deference to a district court's credibility determinations. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985). To vacate a default judgment, the movant must demonstrate good cause for the default, quick action to correct it, and a meritorious case. *Pretzel & Stouffer, Chartered v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994). The burden of proof rests on the party moving to vacate the judgment. *Bally Export Corp.*, 804 F.2d at 401.

As an initial matter, Trade Well's claim that the district court erred in its credibility determinations because it lacked contrary evidence is without merit. A district court need not have contrary evidence to discredit a witness. Rather, a court may find a witness incredible based on a variety of testimonial issues, such as a lack of specific details, implausibility, internal inconsistences, as well as contrary evidence. *See Anderson*, 470 U.S. at 575 ("Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it."). Additionally, Trade Well bore the burden of proof. A district court may properly find a witness insufficiently reliable such that this burden is not met.

Furthermore, Trade Well cannot show that the district court's factual findings were clearly erroneous. The testimony Trade Well presented at the evidentiary hearing lacked specific details, included implausible allegations, and contained

inconsistencies.[2] In addition, the exhibits Trade Well submitted to support this testimony were insubstantial and suggested that Salem and Paracha in fact attempted to contact only a handful of attorneys. Even accepting the testimony at face value, the district court did not err by concluding that Trade Well's efforts to find an attorney were belated and disorganized.

We also agree with the district court that Trade Well cannot satisfy its burden to show that the default judgments should be set aside. The court correctly found that Trade Well could not establish good cause for the defaults. *See Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 367 (7th Cir. 1983) (noting that evidence of delay may weigh against a finding of good cause). Trade Well had nearly seven months to secure a new attorney and avoid the default judgments between Salem's removal and entry of the default orders. Trade Well does not dispute that it had ample notice prior to the defaults, yet it did nothing beyond Salem's and Paracha's alleged efforts to secure counsel. Furthermore, Paracha's efforts did not commence until October 2014 and thus were too late to demonstrate good cause. Taken together, we conclude that the district court did not err by finding that Trade Well had not conducted a reasonable and diligent search for representation.

The district court also correctly found that Trade Well failed to take quick action to set aside the default judgments.

---

[2] For instance, Salem could not remember any names of the attorneys he contacted, and both Salem and Paracha implausibly claimed that they did not discuss compensation with any of the attorneys they contacted. Salem's filings are also inconsistent with his testimony. Salem alleged in court documents that he had contacted "over ten attorneys," yet he testified that he had contacted 50 to 100 lawyers.

This factor relates to "the time elapsing between entry of judgment and the motion to vacate." *Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994). Here, the default judgments were imposed on October 27, 2014, yet Trade Well waited five months before moving to set them aside. What constitutes "quick action" varies from case to case, but in this case the district court did not err by concluding that five months does not meet the standard, especially given that Trade Well had timely notice of the defaults. *See id.* (affirming the district court's conclusion that five weeks was too long to satisfy the quick action requirement).

Accordingly, the district court did not abuse its discretion by denying Trade Well's motion to vacate.

### C. Effect of *Trade Well I*

Finally, Trade Well argues that this Court's decision in *Trade Well I* requires us to vacate the default judgments. Trade Well contends that had Salem not been erroneously removed from the case, the default judgments would not have been entered. Thus, in Trade Well's view, our decision to vacate the order to remove Salem also operates to vacate the default orders caused by the district court's later-reversed removal order.

We disagree. At the outset of *Trade Well I*, we noted that "[t]he only part of this messy case that is before us is Salem's appeal from the various measures the court took against him." 778 F.3d at 625. And we specifically stated that "[w]e are also not concerned with any possible appeal by Trade Well contesting the default judgment or the finding of a failure to prosecute." *Id.*

There is therefore no basis for reading *Trade Well I* to have any effect on the district court's default orders. Moreover, even if we accept the premise of Trade Well's argument, it is inaccurate to say that Salem's removal caused Trade Well to default because Trade Well had ample opportunity to secure substitute representation and avoid default.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.